SCHAFFNER ET AL. *v.* PRESTON OIL COMPANY.

[No. 12,196. Filed January 13, 1927. Rehearing denied April 7, 1927. Transfer denied July 1, 1932.]

T. *Morton McDonald,* for appellants.

*Embree & Baltzell, James J. Robinson* and *Louis B. Ewbank,* of Counsel, for appellee.

ENLOE, J.—Action by appellee against appellants for damages for the alleged breach of contract. The action was commenced in November, 1922, and the appellee filed an affidavit and bond, and asked that writ of attachment issue against the goods and chattels of appellants, the grounds for the issuance of such writ, as stated in the affidavit for attachment, being the non-residence of said appellants. The writ of attachment was issued as prayed and by virtue thereof the sheriff of said county seized goods and chattels, the property of appellants, of the value of several thousand dollars, and such proceedings were thereafter had in said cause that on April 21, 1923, a judgment was rendered upon default against appellants in the sum of $12,275 and costs, and the property which had been attached was sold by the sheriff, and proceeds applied in part satisfaction of said judgment.

Thereafter on May 9, 1923, the appellants, who, as appears by the record, had been notified of the filing and pendency of said suit by publication only,—constructively served,—filed their verified application, or complaint, to set aside said judgment, open up said case and to permit them to defend said action, and in said application they alleged that they had a meritorious defense to said action. To this application the appellee appeared by its attorney and resisted the same. On a hearing this application of appellants was sustained,

and said judgment vacated, the said default set aside, and appellants permitted to defend said action.

Later the appellants by leave of court filed an answer in general denial to the said complaint, and also thereafter filed their cross-complaint against the appellee in three paragraphs.

The appellee, in its complaint, had alleged that in December, 1920, it was engaged in the general business of owning and holding oil and gas leases and of developing the same, by drilling and exploring for oil and gas; that the appellants at said time were a partnership, and as such engaged in the business of drilling oil and gas wells as contractors; that appellee was, at said time, the owner and holder of a certain oil and gas lease covering a farm, known as the Henry Mauck farm, in Gibson county, Indiana, and on the 13th day of December, 1920, it entered into a contract, in writing, with appellants under which they were to drill a well on said lease, exploring for oil or gas, the said written contract being set out in full in said complaint.

The complaint then alleges that appellee "had done and performed all things required by the terms of said contract to be by it done and performed"; that the appellants had entered upon said premises and commenced the drilling of a well, and had drilled the same to a depth of about 1,250 feet, but, that on the 4th day of September, 1921, appellants quit work on said well and had abandoned said well and all work thereon, although said well had not been drilled to the depth specified and required by said contract; that though often requested so to do, appellants had refused to resume work thereon and complete said well.

Two elements, as damages, were alleged in said complaint as having been suffered by the appellee, namely, —that it was the owner and holder of a number of other

oil and gas leases on farms in the vicinity of the Mauck farm, and that in order to hold said leases and prevent the lapse and forfeiture of the same, it had been compelled to expend, and had expended the sum of $5,000, in carrying said rentals,—also,—that it had been put to an expense of more than $10,000, in erecting the drilling rig, procuring and delivering casing on the ground at said well, all of which had been wholly lost to appellants.

The contract entered into by the parties, under date of December 13, 1920, was as follows:

"Preston Oil Co., Pittsburgh, Pa.

Gentlemen:—We hereby propose to drill, in search of oil or gas, a well on lease known as Henry Mauck farm, situated in Montgomery Township, Gibson county, Indiana, to and through the second McCloskey sand, unless oil or gas in sufficient paying quantities may be found at a lesser depth, for a price of three dollars and fifty cents ($3.50) a foot, you to furnish rigs and casing on the ground. We agree to do the drilling, provide all equipment, tools, fuel, and water at the aforementioned price of $3.50 per foot. Any expense incurred by us in drawing or reseting of casing or extension of same by other methods after the same has been set at or in the McCloskey No. 1 sand to be paid by you.

"The drilling of said well to begin as soon as derrick can be erected thereon. If this meets with your approval, please signify by accepting this letter in writing.

Yours very truly,
Schaffner Bros.,
By Chris Schaffner.

"The above proposal accepted by us this 13th day of December, 1920.

Preston Oil Company,
By A. B. Loucks, President."

The first paragraph of cross-complaint alleged the execution of said contract, pleading the same *haec verba,* that under and in pursuance of said contract, and at the request of appellee, they had expended money to a large amount, in placing casing, lumber and materials on the ground; that said money was so expended in January, 1921; that appellees, though requested, had neglected and refused to reimburse appellants for the money so expended; that appellants had commenced the drilling of said well and had requested the appellee to pay, at the end of each month, for the work done in drilling said well during the previous month, but appellee refused so to do; that appellee refused to pay to appellants any money whatever so due, though often requested so to do, and that because thereof appellants ceased work on said well on September 4th, 1921. Damages were asked in the sum of $10,000.

The second paragraph was for work and labor done, money expended and materials furnished, and claimed a balance due thereon of $6,877.50.

The third paragraph of cross-complaint sought to reform the said contract, alleging a mutual mistake therein, so that said contract would specifically provide for the payment of said work of drilling said well, as the said work progressed; it also alleged that said well had been drilled to a depth of 1,565 feet, and that there was due therefor the sum of $5,477.50, and that there was also due appellants for labor, money paid, and materials furnished, in and about erecting and placing "rigs" and casing on the grounds, the sum of $1,400.

Reply in general denial, and of payment, closed the issues which were submitted to the court for trial with a request that the court make a special finding of the facts and state its conclusions of law thereon, which was done, the court stating eight conclusions of law, to each

of which, except the 2nd and 3rd, the appellants duly excepted; they also filed a motion for a new trial, and a motion to modify the judgment, each of which was overruled, with exception to appellants.

At the conclusion of all of the evidence the court, over the objection of appellants, permitted the appellee to amend its complaint by inserting therein as an additional element of damage the following allegation viz— "And that by reason of the breach of contract aforesaid, and by reason of the negligence in the care of said casing on the part of the defendants, the casing has depreciated in value and has been damaged in the sum of $1,990.90." Error is predicated also upon this action of the court.

The special findings, so far as they are material to the decision of the questions involved, as to the validity of the several conclusions of law, were in substance as follows:—That on and prior to the 13th day of December, 1920, the appellee was the owner and holder of an oil and gas lease on the Henry Mauck farm in Gibson county, Indiana (describing the premises); that it was also the owner of other oil and gas leases on farms located in the vicinity of said Mauck farm; that on December 13, 1920, appellants and appellee entered into a contract in writing, for the drilling of a well, exploring for oil and gas, on said Mauck farm (said contract as found being herein before set out); that appellants commenced drilling said well in March, 1921, and continued work thereon, except for intervals when stopped on account of shortage of labor and water, until September 4, 1921, when, at a depth of 1,565 feet, they discontinued all drilling operations; that said drill, when work stopped on said well, had not reached second McCloskey sand, nor had any oil or gas in paying quantities been found in said well; that as items of expense required

by the terms of said contract to be borne and furnished by appellee, the appellants dismantled a certain "oil rig" owned by appellee, located in the state of Pennsylvania, hauled the same to the railroad station, and shipped the same to Owensville, Indiana, and transported the same onto said lease, and erected the same on said lease preparatory for drilling operations; that the labor so expended, materials used on said rig, and money paid for freight was reasonably worth $2,745.95, of which sum appellants have been paid $1,000; that said work was done, said materials furnished, and said money paid, with the knowledge and consent of appellee and for its use and benefit, and that said work was done, materials furnished, and freight paid under and pursuant to an oral agreement, made between appellants and one James L. Adams, an agent of appellee. The court further found that said written agreement contained the whole contract between the parties, and that there was no agreement relating to the payment of the work of drilling said well as the work progressed, either weekly, monthly, or otherwise; that between September, 1921, and August, 1922, the appellee, at various times, requested appellants to continue work on said well and complete the same according to said contract, but they refused so to do, and on August 22, 1922, appellee notified appellants that said contract was terminated. The court further found, that the appellee did not complete said well or have the same done, but had the casing pulled from said well, the rigging dismantled and removed, and it abandoned said well, although at the time said well was in good condition and could have been completed according to specifications in said contract at said time.

The court also found that appellee had paid $938.94 on account of other leases held by it, and to prevent a

forfeiture thereof. The 23rd finding so far as now material was as follows: "That by reason of defendant's failure to properly care for and protect the said casing left on the ground at said well, . . ., the same depreciated in value in the sum of $1,473.26, which depreciation was caused by the negligence of the defendants."

The conclusions of law, to which exceptions were taken, were as follows:

1st. "The plaintiff is entitled to recover of and from the defendants, for rentals on leases paid by plaintiff, the sum of $938.94."

4th. "The defendants are not entitled to have said written contract of December 13, 1920 reformed in any particular."

5th. "The defendants are not entitled to recover of the plaintiff for the drilling done by them at the rate of $3.50 per foot, or for the reasonable value of such drilling."

6th. "The defendants had no just cause to discontinue said drilling."

7th. "The plaintiff is entitled to have the proceeds of sale of said goods and chattels under said writ of attachment and former judgment of this court applied towards the satisfaction of the judgment to be rendered herein, less, however, the amount of recovery of defendants against the plaintiff on defendants' cross-complaint herein. And the defendants are entitled to have refunded to them any surplus remaining after plaintiff's judgment is satisfied as herein provided."

8th. "Plaintiff is entitled to recover of the defendants on account of damage to casing left on the ground the sum of $1,473.26." We shall first notice the first conclusion of law stated by the court.

Under the facts found, was the appellee entitled to recover, as damages incident to the breach of the con-

tract in question, the money it had paid out on account of lease rentals?

It is elemental that, in an action for damage for the breach of a contract, only such damage may be recovered as can be said to be the natural and proximate consequences of the breach, and such as can be fairly said to have been contemplated by the parties as damages in case of a breach of said contract. *Fuller* v. *Curtis*, 100 Ind. 237. In the case of *Coy* v. *Gas Co.*, 146 Ind. 655, 46 N. E. 17, it was said: "In actions on contract, as said by counsel, the damages that may be recovered for a breach of the covenants and conditions are, (1) those that result from the usual, natural, and probable consequence of the breach, and which, therefore, the parties may be thought to have had in mind when they entered into the contract; and (2) special damages *referred to in the contract*, and which actually occur, although not such as might naturally and probably be expected to arise out of the breach of the contract. It is to be observed that such special damages are also in contemplation of the parties in making the contract, as well as the damages of the first which naturally flow from a violation of the contract. The difference is, that damages naturally arising from the breach of the contract *need not be mentioned in the agreement made,* but will be presumed to have been in contemplation of the parties, whereas, *special damages, or those not naturally or usually arising from a breach of the contract,* though contemplated by the parties, must be specially referred to in the contract itself." (Our italics.)

The damages claimed were special, and were not mentioned in the contract. If the appellee, under the facts of this case, was entitled, as a matter of law, to recover as damages the money paid as rental on its oil leases, by the same token it was also entitled to recover the

money by it laid out and expended,—$1,000,—in shipping the aforementioned property from Pennsylvania to Indiana, or any other expense which it incurred in the matter of the drilling of said well. We hold that appellee was not entitled to recover any sum of damages on account of rentals paid, and that the court erred in its first conclusion of law.

It will be noted that, although the court found that said well was in good condition and could have been completed, the appellees elected to abandon said well and had the casing pulled therefrom, and in this action made no claim for damages for completing said well,—for doing the thing which the appellants, by their contract had obligated themselves to do, and we need not, therefore, give any consideration to this element of damages, as no claim is made therefor.

We next consider the element of damage to casing, as a result of its being left lying on the ground, etc., after appellants had ceased work on said well.

This was an action, not in tort, but for damage for breach of a contract. Section 286, Burns 1926, provides what actions may be joined, but we find no authority therein for joining a demand for damages alleged to arise from the breach of a contract, with a demand for damages to personal property, arising out of neglect,—a tort. See *Boyer* v. *Tiedman,* 34 Ind. 72, *Bank* v. *State,* 61 Ind. App. 360, 112 N. E. 40. At the conclusion of all the evidence, the court, over the objection of appellants, permitted the complaint, which was in one paragraph, to be so amended as to include the above last mentioned element of damages. This, to say the least, was an unusual proceeding, but, as this cause must be reversed for other errors, we shall not further consider it.

Was the appellee entitled to recover anything as damage because of the failure of appellants to care for said

casing? The court found that the entire contract between the parties was in writing, and we read said contract in vain to discover any agreement therein binding the appellants to care for said casing, and pile and protect the same from the elements, there was no duty resting upon them so to do, and in the absence of said duty there could be no liability, on their part, or as against them, to respond in damages. When appellants ceased work on said well, the casing was then upon the premises; the appellee knew this fact; and if said casing, for its protection, should have been piled and sheltered, that was the business and duty of appellee, not of the appellants. Also, it is settled law, as said by the Supreme Court of Florida, in *Sullivan* v. *McMillan,* 37 Fla. 134, that the damages may be said to be fixed by the law of the contract *the moment it is broken,* and cannot be altered by collateral circumstances independent of, and totally disconnected from it, and from the party occasioning it." Under this rule, when the appellants ceased work on said well in violation of this contract, the damage to the appellee then and there became fixed. This being a construction contract,—the drilling of a well,—the measure of damage to the appellee was the cost, if any, in excess of its contract price with the appellants, reasonably necessary to complete said well according to said contract. But appellee did not elect to complete said well and therefore could not claim this damage, but tried to hold appellants for *special* damages as before noted. We hold that the court erred in its said 8th conclusion of law.

As to the 4th conclusion of law stated by the court,—this conclusion was based upon 10th and 19th special findings, and these findings are sufficient to sustain said conclusion of law.

The findings of the court disclose that there were two contracts between the parties hereto,—one for the drill-

ing of said well, which was the written contract in suit, and the other, a verbal contract under which appellants dismantled and took down certain "rigs" in Pennsylvania, and shipped the same to Indiana, all at the expense of appellee. As this contract was separate and distinct from the contract for drilling the said well, the breach of this latter contract by the appellee, by failing to pay for said work, materials, and freight paid, could not justify the appellants in breaching their contract for the drilling of said well. If the work done by the appellants in the matter of drilling said well was of any value to the appellee, so as to entitle appellants to recover therefor, the burden was upon the appellants to establish that fact. There is no finding that the work so done was of any value, and under the well settled rule, the absence of such a finding has the effect of a finding against the appellants upon that issue. It follows that there was no error in the court's said 5th and 6th conclusions of law. It also follows, from what we have hereinbefore said, that the court erred in its said 7th conclusion of law.

The appellee herein has assigned cross-error in that the court erred, (a) in sustaining appellants motion to open up and vacate the original judgment rendered in this case, and (b) error of the court in overruling appellee's demurrer to the application of appellants for leave to file answer and defend.

The contention of the appellee is, as stated in its brief, that "the court did not have jurisdiction of appellee, because no notice had been served on appellee of the proceedings to open the judgment": that as the statute,—section 423, Burns 1926,—requires notice to the adverse party, "as in an original action," and as the record does not show that any such notice was given, the court was without jurisdiction to set aside said judgment.

The record in this case discloses the following steps taken herein by the parties, the record, under date of May 9, 1923, being as follows:

"Come now the defendants Chris Schaffner, Frank Schaffner, and Jacob Schaffner, by Claude A. Smith and T. Morton McDonald, their attorneys, and comes also the plaintiff, Preston Oil Company, by James J. Robinson, its attorney, . . ., and now the defendants file their verified application to have the judgment heretofore rendered against them in the above entitled case on the 21st day of April, 1923, opened. And said application is now submitted to the court for hearing and determination and the court, having seen and impected said motion and being duly advised in the premises, now sustains said motion and said application is granted, to which ruling of the court the plaintiffs each separately at the time excepts, . . ., and now the defendants offer to file their answer in general denial to the complaint herein, to the filing of which answer the plaintiff objects, and the court takes said offer and objection under consideration."

On the next day, May 10, 1923, the transcript shows proceedings in this cause as follows: "Come again the parties and the defendants file verified application to file answer and defend."

On May 16th, 1923, the record of proceedings had herein is as follows: "Come again the parties and the plaintiff files demurrer to the application of the defendants to be permitted to file answer and defend." The demurrer so filed by the appellee was, by the court, held under consideration until June 8, 1923; when the same was overruled and permission given appellants to file answer and to defend, "to which action of the court appellee duly excepted."

Upon this record, the objection of the appellee to the jurisdiction of the court cannot be sustained. The stat-

ute provides, as to such an application, that it shall be by complaint, and that notice shall issue, "as in an original action." The court, by statute, was expressly given jurisdiction of the subject matter; jurisdiction of the court over the person was to be acquired by notice; but notice, even by summons, may be waived by the party appearing in court and participating in the proceedings. *College Corner, etc., Co.* v. *Moss, et al.,* 77 Ind. 139. In the case of *McCormack* v. *Bank,* 53 Ind. 466, it was said: "The filing of the complaint and the issuing of the summons do not confer jurisdiction over the person of the defendant. This may be done in four ways: 1st, by reading the summons to the defendant. . . . 4th, by the voluntary appearance of the defendant, either in person or by attorney." It has also been held that the procuring of a formal entry to be made by the court on its docket, as of the filing of a motion, a demurrer, or a plea, is an appearance by the party. *Shirley* v. *Hagar,* 3 Black, 225; *Scott* v. *Hull,* 14 Ind. 136; *Voss* v. *Lewis,* 126 Ind. 155, 25 N. E. 892; *Eaton* v. *Bank,* 141 Ind. 159, 40 N. E. 693. Tested by the rule laid down in these decisions, the appellee entered its appearance herein to said proceeding and the court had jurisdiction not only of the subject matter, but of the person of appellee.

As to appellee's second assigned error: It will be noticed that the action of the court of which complaint is made, was the overruling of the demurrers to the application of appellants for *leave to file answer.*

The complaint of appellants, asking the court to set aside said default and judgment, had theretofore been heard and considered, and said judgment had been set aside, and appellants were now asking for leave to defend,—to file answer. In *Buck* v. *Havens,* 40 Ind. 221, it was said: "We are of the opinion that under the 99th section of the Code as amended, . . ., no further proceedings are contemplated than the complaint or

motion, and that the matter should be heard in a summary manner by the court." See also, *Graves* v. *Kelly*, 62 Ind. App. 164, 112 N. E. 899. The complaint to have said judgment vacated and set aside, having been sustained and said judgment set aside, we know of no rule of law, or statute, which requires the "request for leave to file answer" to be in writing, or any law or rule of practice which authorizes or sanctions the filing of a demurrer thereto, if such request should happen to be in writing. Such an application is in no proper sense a "pleading" in the case, and the court did not err in said ruling.

Having reached the conclusion which we have as to the foregoing matters, the seventh conclusion of law, as stated by the trial court becomes superfluous, and the same should be omitted from the conclusion hereafter to be stated by the trial court.

For the errors indicated this cause is reversed with direction to the trial court to restate said first (1) and eighth (8) conclusions of law in harmony with this opinion, and to render judgment accordingly, and the death of appellants Frank Schaffner and Jacob F. Schaffner having been suggested, this cause is reversed as of the date of submission.