**MIRACLE MILE SHOPPING CENTER,**
Plaintiff-Appellee,

v.

**NATIONAL UNION INDEMNITY COMPANY,** Defendant-Appellant.

No. 13363.

United States Court of Appeals
Seventh Circuit.

March 2, 1962.

Rehearings Denied April 4, 1962.

R. Stanley Lawton, Indianapolis, Ind., Jim A. O'Neal, Indianapolis, Ind., Ross, McCord, Ice & Miller, Indianapolis, Ind., of counsel, for appellant.

C. Severin Buschmann, Indianapolis, Ind., William C. Wines, Chicago, Ill., Carl J. Greenberg, Allen S. Gerrard, Chicago, Ill., for appellee.

Before DUFFY, KILEY and SWYGERT, Circuit Judges.

SWYGERT, Circuit Judge.

This is an action on a surety bond involving a construction contract. Plaintiff, Miracle Mile Shopping Center, brought separate suits based upon diversity jurisdiction against defaulting contractor, Inman Construction Company, and the surety (appellant), National Union Indemnity Company. The actions were consolidated for trial without a jury. The District Court entered judgment against the contractor for $116,-446.78 and against the surety for $111,-310, the face amount of the bond. National Union admits liability for $53,000 but appeals from the balance of the judgment. The contractor did not appeal.

In 1956 plaintiff entered into an agreement with the contractor for the construction of the first building in a proposed shopping center on land owned by plaintiff at Clarksville, Indiana. Plaintiff had negotiated a lease with National Tea Company for the use of the building. The contract price, as revised, was $111,-310.

National Union executed its "Owner's Protective Bond" September 6, 1956, effective January 26, 1956, the date of the construction contract. The defeasance clause of the bond provided that the surety's obligation to pay the penal amount would remain in force unless the contractor should "faithfully perform such contract * * * and shall indemnify and save harmless the Owner from all cost and damages by reason of Principal's default or failure so to do. * * * "

The District Court found that the contractor breached the construction contract on July 20, 1957, by abandoning the project and that no work has been done since that time; that the owner had performed its part of the contract; and that the surety had refused to comply with its bond.

National Union concedes that the evidence supports the "factual findings" of the trial court and therefore makes no contention that the findings of fact are erroneous. It contends, however, that the court erred as a matter of law in computing the damages.

The damages computed by the trial court are as follows: $79,557 was allowed as the cost of completing the building plus correction of defective work. The court did not elaborate on the source of this figure but there was testimony that the cost of completion at the time of trial was $79,557. The court allowed $8,500 for the increased cost of mechanical contracts as a result of the default and further allowed a credit of $10,000 as the value of extra work not covered by the contract. The sum of $38,389.78 was added as interest at six per cent from the date of default, July 20, 1957, to the date of judgment. The interest was computed on $182,808.48 which represented plaintiff's loss of use of the $111,310 contract price (of which $102,189.48 was paid to the contractor and the remaining $9,120.52 was placed in escrow for his benefit), loss of use of $21,498.48 paid for mechanical contracts, loss of use of the building site valued at $60,000, and a credit of $10,000 for the extra work not covered by the contract.

National Union's position concerning liability may be summarized as follows. It contends that the trial court adopted the highest completion cost estimate, namely, $79,557 given by any of the witnesses; that this amount should be reduced by at least seven per cent, that is, to $73,988.01, because the witness testified his estimate of $79,557 was based upon the cost of completion at the time of trial and included increased costs of seven to ten per cent; that there should be subtracted from the $73,988.01 the sum of $10,000 representing the extra work performed by the contractor and

also $11,131 representing ten per cent of the contract price which sum National Union claims the owner was required by the contract to retain until its completion. The deduction of these two amounts from the $73,988.01 leaves a net figure of $52,857.01 which National Union says is the amount of damages that should have been awarded against it.

National Union contends that while the contractor may be liable for special or consequential as well as general damages upon its default since it was responsible for the construction the surety under the terms of the bonding agreement is not liable for any special or consequential damages. According to National Union, in the event of default by the contractor, the surety's obligation was either to complete the building or to pay the reasonable cost of completion less retainage.[1] It maintains that since it did neither its liability must be measured by that alternative which is least beneficial to the obligee under the bond; that is, that the damages are those resulting from the alternative which gives the least recovery, citing W. J. Holliday & Co. v. Highland Iron & Steel Co.,[2] 43 Ind.App. 342, 87 N.E. 249.

The first of alternative obligations specified in the clause under consideration was to complete the building. The damages resulting from a breach of this obligation would be the cost of completion plus special or consequential damages for loss of use. The latter damages would be allowable in the light of the unchallenged finding by the trial court that there had been long and unreasonable delay on the part of the contractor. Johnson-Johnson Inc. v. Farah, 123 Ind. App. 87, 108 N.E.2d 638.

The alternative obligation under this clause was to pay in cash the cost of completion less retainage within fifteen days after determination of such cost. National Union claims the contractual right to insist upon this alternative obligation as the one by which its liability should be determined. It says this is the lesser alternative because if it be held to this obligation, no special or consequential damages can be awarded.[3]

We do not agree with National Union's interpretation of the bond provisions. The bond sets out a primary obligation on the part of the surety, namely, that the contractor and it are "held and firmly bound" to the owner in the sum of $111,-310. The defeasance clause follows and provides that if the contractor faithfully performs and saves the owner harmless from all cost and damage by reason of the contractor's default, then "this obligation shall be null and void; otherwise it shall remain in full force and effect." National Union contends "this obligation" refers to its covenant that in event of the contractor's default it would either complete the construction or pay in cash the cost of completion. In our view, however, "this obligation" refers to the primary obligation to pay the penal sum should the contractor's default damage the owner to that extent.

1. Following the defeasance clause the bond provided: "In event Principal is in default under the contract as defined therein, Surety will (a) within fifteen (15) days of determination of such default, take over and assume completion of said contract and become entitled to the payment of the balance of the contract price, or (b) pay the Owner in cash the reasonable cost of completion, less the balance of the contract price including retained percentage. The cost of completion shall be fixed by taking bids from at least three responsible contractors, one chosen by the Owner, one by the Architect and one by the Surety. The Surety will make such payment within fifteen (15) days after the cost of completion shall have been so determined."

2. The court held there that where a contract gives one of the parties a "right" to alternative breaches the damages must be measured by that alternative which will be the least injurious to "the party having the right to exercise the choice."

3. National Union concedes that it would be liable for interest on the cost of construction from date of breach until judgment.

The covenant upon which National Union relies does not place a ceiling upon its liability; rather, it fixes a minimum liability. Ostensibly, the purpose of the covenant was not to protect the surety or establish its maximum liability. On the contrary, its purpose could only be to protect the owner inasmuch as it assures him that if the contractor defaults, the resumption of construction would not be delayed. National Union neither took over the construction within the fifteen day period nor paid for its completion within fifteen days after the cost was determined. The breach of this covenant therefore brought about the very losses to plaintiff that the covenant was designed to prevent. National Union cannot now use the covenant, after breaching it, as a shield to avoid its primary obligation under the bonding agreement to make good all losses occasioned by the contractor's default, limited, of course, to the penal sum of the bond.

Accordingly, special damages for loss of use assessed against the contractor were properly included in the damages assessed against the surety, as were the increased costs of completing the mechanical contracts.

Defendant asks for a credit of $10,000 for the value of extra work performed but not paid for. The trial court allowed this credit in its computation of damages.

■ Defendant asks for a further credit of $11,131 representing the ten per cent retainage plaintiff allegedly should have held back. The contract permitted the owner to retain ten per cent of the pre-completion payments to the contractor until the building was completed. There was no requirement, however, that it do so. Furthermore, the bond provided, "The Surety hereby waives notice of any alteration, extension or *forbearance* made or extended by the Owner or Principal." (Emphasis supplied.) The findings show that the full contract price had been paid either to the contractor or to an escrow agent at the time of default.

The escrow arrangement had been agreed to by National Union and, prior to the present action, the escrow agent had been made a defendant in a state court receivership proceeding against the contractor which proceeding had been instituted by National Union and two other bonding companies. Since there was no contractual obligation that plaintiff retain a part of the pre-completion payments and since in fact it had not done so but had paid the entire contract price, National Union's contention that it should be credited with the amount that could have been retained is without merit.

■ National Union's remaining contention is that the trial court, in determining the costs to complete the building, erred by making the determination as of the time of trial instead of the time the contractor defaulted. It would appear that the trial court adopted an estimate of the costs of completion as of the time of trial. The law of Indiana requires that the costs of completing a defaulted contract be determined as of the date of its breach. Schaffner v. Preston Oil Co., 94 Ind.App. 554, 154 N.E. 780; Jones, Adm'r of Shultz v. Van Patten, 3 Ind. 107. Accordingly, we hold that it was error to determine the costs of completion as of the time of trial rather than when the construction contract was breached and that the amount of the completion costs should have been $73,988.01, as National Union contends, instead of $79,557 as found by the trial court. The difference in these amounts is $5,568.99 which would reduce the total damages against National Union to $110,877.79. The judgment should be modified accordingly.

This cause is remanded to the District Court with direction to modify its judgment consistent with the views expressed herein.

The judgment appealed from, as modified in accordance with the foregoing remand, is hereby affirmed.