**Mohammed HAMED, Khalil Awwad and Michigan Foods, Inc.,**
**Plaintiffs–Appellees,**

v.

**GENERAL ACCIDENT INSURANCE COMPANY OF AMERICA,**
**Defendant–Appellant.**

No. 87–1919.

United States Court of Appeals, Seventh Circuit.

Argued Jan. 19, 1988.

Decided March 11, 1988.

Tamara Renner, Sweeney Pfeifer & Blackburn, South Bend, Ind., for defendant-appellant.

David S. Stevens, East Chicago, Ind., Robert G. Berger, Highland, Ind., for plaintiffs-appellees.

Before BAUER, Chief Judge, POSNER, Circuit Judge, and WILL, Senior District Judge.[*]

WILL, Senior District Judge.

Defendant-appellant, General Accident Insurance Company of America ("General"), a Pennsylvania corporation, issued a standard business owner's insurance policy to Michigan Foods, Inc. ("MF"), plaintiff-appellee, an Indiana corporation. The individual plaintiffs Mohammed Hamed and Khalil Awwad owned MF. Insurance coverage for the business personal property was limited to $75,000. The business dwelling was not owned by either MF or the individual plaintiffs and was not insured under this policy. The policy provided that General was not obligated to pay proceeds in the event of any fraud, misrepresentation or concealment on the part of MF.

On March 25, 1985, MF's business property burned down. A preliminary investigation by the local police and fire departments revealed that signs of a "forced entry" were found at the premises but that such signs seemed staged. Thomas Cairnes, an independent adjuster hired by General, testified at trial that Awwad was cooperative and gave a statement at the scene of the fire.

On May 14, 1985, Cairnes sent the plaintiffs a letter requesting that they submit a proof of loss. The plaintiffs filed a proof of loss on May 23, 1985. On June 21, 1985, Roger Ullery, General's South Bend office manager, informed the plaintiffs by letter that a decision would be made within 30 days of their examination under oath. Awwad gave a sworn statement on June 11, 1985, and a second on September 10, 1985.

During this time, General was transferring all of its South Bend cases to its Indianapolis office. Michael Cook assumed responsibility for this case. He testified that the file was not reviewed in June or July and only "skim[med]" in August, 1985.

On September 26, 1985, Awwad's attorney notified General that the plaintiffs' financial condition was very poor and requested a prompt settlement of their claim. General neither replied nor responded until after this suit was commenced on December 12, 1985, almost nine months after the fire. General filed its answer denying the claim on May 16, 1986, more than one year after the fire, and almost a year after the claim was filed, and asserted arson as an affirmative defense. This was the first notification by General that the claim was denied or that the plaintiffs were suspected of arson.

A jury returned a verdict in favor of MF, awarding $75,000 in actual damages (the policy limit) and $100,000 in punitive damages. The actual damages to merchandise and equipment was stipulated to be $89,588.45. Magistrate Rodovich denied General's motion for judgment notwithstanding the verdict. His decision was initially based on the fact that General did not move for a directed verdict at the close of all the evidence. General had moved for a directed verdict at the close of the plaintiffs' case but failed to renew its motion at the close of all the evidence. Additionally, however, Magistrate Rodovich denied General's motion on the ground that the jury verdict was clearly supported by the evidence. Judgment was entered on December 31, 1986 in favor of MF and against General for $175,000. Thereafter, on May 26, 1987 judgment was entered in favor of General against the named individual plaintiffs, Hamed and Awwad. General has appealed only the $100,000 punitive damages judgment for MF on the jury's verdict. We affirm.

* The Honorable Hubert L. Will, Senior Judge of the United States District Court for the Northern District of Illinois, Eastern Division, is sitting by designation.

## Analysis

Under Indiana law, an insurer is obligated to "deal in good faith with the insured. This duty is breached when an insurer fails to settle a claim that could not in good faith be disputed." *Liberty Mutual Insurance Co. v. Parkinson*, 487 N.E.2d 162, 164 (Ind.App.1985). Punitive damages for breach of contract can be imposed where: (1) the conduct in issue constitutes an independent tort (e.g., economic duress, *Vernon Fire & Casualty Insurance Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173, 180 (1976)); or (2) "elements of fraud, malice, gross negligence or oppression mingle in the controversy ... provided that the public interest is served by the deterrent effect of punitive damages awarded." *Hoosier Insurance Co., Inc. v. Mangino*, 419 N.E. 2d 978, 981 (Ind.App.1981). *See also, Art Hill Ford, Inc. v. Callender*, 423 N.E.2d 601 (Ind.1981); *Hibschman Pontiac Inc. v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845 (1977). Despite these two grounds for punitive damages, Indiana courts are reluctant to impose such damages.

> [P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.

*Travelers Indemnity Company v. Armstrong*, 442 N.E.2d 349, 362 (Ind.1982). In addition, the imposition of punitive damages must be supported by clear and convincing evidence. *Id.* at 363.

General's investigation concluded, among other things, that (1) the fire was of incendiary origin; (2) the operators of MF, immediately prior to the fire, drastically increased their inventory so as to give the appearance that the business was thriving; (3) the forced entry marks were staged; and (4) MF personnel were seen removing boxes of property within two hours of the fire although they testified at trial that they had left the premises four and one half hours prior to the fire and did not remove any property.

An investigation by Barker and Herbert Analytical Laboratories, hired by the building owners' insurance company (State Farm Insurance Co.), concluded that the fire had multiple areas of origin and accelerants were used. The business dwelling had an alarm triggered by opening a rear door, movement in the store, or removal of the last dollar bill from the cash register. Only the last dollar bill was left in the cash register prior to the fire. General's investigation concluded that the fire was planted by someone from within the building.

Although there was substantial evidence that the fire was the result of arson, there was no direct evidence that the plaintiffs were responsible for the fire. In addition, the value of the property destroyed was not in dispute.

> [T]he evidence at trial established that although several investigations revealed that the fire was of incendiary origin, there was no indication that the plaintiffs or someone acting on their behalf had started the fire. In fact, the Cairnes investigation was the only one done at the request of General Accident. The State Farm Insurance Company had issued an insurance policy to Michael Fields, the owner of the building, and General Accident was furnished a statement given by Mr. and Mrs. Fields to State Farm. General Accident relied on that statement without attempting to question the Fields or to verify some of the information provided by the Fields. Much of the Fields' statement was shown to be inaccurate at trial.

The evidence was sufficient to allow the jury to find that after October 10, 1985 [30 days after Awwad's final sworn statement], General Accident could not in good faith dispute the amount of its liability. In fact, on October 20, 1986, the parties filed a stipulation that Michigan Foods' total inventory at the time of the fire was $29,375 for the merchandise and $60,213.45 for the equipment. The total stipulated loss was $89,588.45. The jury

awarded $75,000 in compensatory damages which represented the policy limits. Because the plaintiffs' loss exceeded the policy limits, the jury award was reasonable.

District Court Order Denying Defendant's Motion for Judgment Notwithstanding the Verdict, at 4–5.

While arson can be established by circumstantial evidence, (see, *Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Insurance Company,* 536 F.2d 1187 (7th Cir.1976)), the lack of evidence establishing a reasonably strong nexus between the plaintiffs and the alleged arson negated a good faith defense for General. The following summary of the evidence by Magistrate Rodovich is persuasive.

The arson defense was not supported by the evidence. Larry Hardy from the Hammond Fire Department and Michael Stevens from the Hammond Police Department were at the scene of the fire and conducted investigations. Both individuals testified that they had no opinion as to who started the fire. In addition, Cairnes testified that he did not know who set the fire. Ullery testified that an independent investigator, John Walker, investigated and reported that the fire was arson, but there was nothing in the report implicating the plaintiffs in the fire. Finally, Michael Cook, a claims manager for General Accident, stated in his deposition that he did not see anything in the file which showed that the plaintiffs started the fire.

This is a case in which a large insurer treated the concerns of small business owners "with utter indifference over a substantial period of time. In the context of this situation, public policy strongly supports an award of punitive damages." General Accident asserted arson as a defense only after its stalling techniques failed. It did not present one shred of evidence showing that the plaintiffs set the fire. In contrast, Michigan Foods "presented evidence from which the jury could have found by clear and convincing evidence the existence of 'malice, fraud, gross negligence, or op-

pressiveness.' " ... Viewing the evidence most favorably to the plaintiffs, it cannot be said that the verdict was unreasonable.

District Court Order, at 6–7 (citations omitted).

While citing and discussing several Indiana appellate court decisions in which punitive damages were disallowed, General relies most heavily on the appellate court's decision in *Hoosier Insurance Co. Inc. v. Mangino,* 419 N.E.2d 978 (Ind.App.1981), which it asserts is "substantially similar, if not 'on all fours' with the facts presented in this case." The facts of this case, however, are significantly different from those in *Mangino.* There, the insured property was destroyed in a fire on December 22, 1976 and the Manginos, the owners and named insureds, met on December 28, 1976 with the insurance company's adjuster. Three days later the Manginos submitted an itemized statement of property lost, and on January 10, 1977 they sent a signed and notarized proof of loss form. *Id.* at 979–80. On February 24, 1977, the insurance company denied liability on the grounds that the Manginos had set fire to their house and had made misrepresentations regarding the fire's origin and the amount of property lost. *Id.* at 982.

Evidence produced at trial established that the fire to the Manginos' house had been deliberately set. *Id.* at 983–86. The jury returned a verdict in favor of the Manginos, however, and awarded both compensatory and punitive damages. On appeal, the award of punitive damages was reversed. The *Mangino* court found that the insurance company had acted in good faith and was permitted to "deny liability without incurring the risk of punitive damages, even ... [though] its defense fail[ed]." *Id.* at 987–88. Moreover, the Manginos did not present any direct evidence of the insurer's bad faith. All of the evidence which the Manginos claimed implied bad faith was sufficiently rebutted or did not rise to the level of fraud, malice or oppressive conduct. Rather, the evidence suggested that the insurance company assisted the Manginos in filing their claim and acted promptly and in good faith in processing and denying it.

As here, there was some evidence to suggest that the insureds in *Mangino* were responsible for the fire or had a motive to cause it. In this case, however, the insureds did not own the real estate as did the Manginos. Accordingly, there were here at least two different insureds with a possible arson motive. Also unlike the facts in this case, the insurance company in *Mangino* acted promptly in assisting the resolution of the insureds' claim and denied coverage soon after the proof of claim was filed. In *Mangino,* the insurance company denied coverage and alleged arson on the part of the insureds *one month and 14 days* after the proof of claim was filed. In this case, General did not deny coverage or raise arson as a defense until *seven days less than one year* after MF filed its proof of claim.

Faced with General's inaction, MF was forced to file suit many months after Awwad had complied with General's requests for sworn statements and proof of claim. Despite a possible basis for concluding that the fire in question was the result of arson, although such grounds were not asserted until after suit was filed which casts doubt on their "good faith," General's delay in processing MF's claim and denying coverage was unreasonable. There was substantial clear and convincing evidence to support the jury's verdict, as Magistrate Rodovich's order and opinion point out.

The facts here are closer to those in *Riverside Insurance Co. v. Pedigo,* 430 N.E.2d 796 (Ind.App.1982). There, an award of punitive damages was upheld even though the insurer's suspicion of arson (and suspicion that the insureds had caused the arson) was reasonable. The *Riverside* court found the insurer

> did not inform the [insureds] of their suspicions or that they were denying the claim on the basis of arson. In fact [the insurer] led the [insureds] to believe the only problem with their claim was alleged defects in the proof of loss claims which the [insureds] had submitted to [the insurer]. Moreover, a fair inference from the evidence is that [the insurer] decided to deny the claim, whether they could prove the [insureds] were arsonists or not, because they thought the [insureds] had deliberately set fire to their house. ... The [insureds] were ultimately able to prove the fire was not caused by arson; however, [the insurer's] conduct of concealment and delay arguably prejudiced their ability to prove their innocence.... In part because an insurance company occupies a position of trust with members of the public whom it agrees to indemnify against certain losses, we believe the imposition of punitive damages in the instant case would further the public interest.

*Id.* at 807–08. Here, General not only caused a significant delay in processing MF's claim but, by not denying the claim until almost one year after it was filed and then only after this suit was filed, led MF to believe that the only problem with its claim was the extent of the loss suffered.

■ General further argues that the award of punitive damages should be vacated because no evidence was submitted of General's net worth and, accordingly, the jury was unable to render a competent decision as to the amount of damages which would satisfy the deterrence purpose of punitive damages. As with its motion for judgment notwithstanding the verdict, however, General has failed to produce any evidence establishing that the amount awarded was unreasonably high in relation to its net worth. And although "such factors as size and earning capacity of the wrongdoer should properly be considered," when assessing an award of punitive damages, *Joseph Schlitz Brewing v. Central Beverage Co., Inc.,* 172 Ind.App. 81, 359 N.E.2d 566, 581 (1977), the plaintiffs were not required to introduce evidence of General's net worth. *Tutwiler v. Snodgrass,* 428 N.E.2d 1291, 1299 (Ind.App.1981), rev'd on other grounds, *Bud Wolf Chevrolet v. Robertson,* 508 N.E.2d 567, 568 (Ind.App. 1987). An award of punitive damages is deemed excessive only if "there was no rational connection between the evidence on damages and the verdict-unless, in other words, the verdict was 'monstrously excessive.' " *Abernathy v. Superior Hardwoods, Inc.,* 704 F.2d 963, 971 (7th Cir. 1983), *quoting, Quilter v. Elgin, Joliet & E. Ry.,* 409 F.2d 338, 340 (7th Cir.1969). There is no evidence in this record that the

award of $100,000 was unreasonably high in relation to General's net worth or to the damages sustained by MF.

### Conclusion

The jury heard the evidence, was properly instructed and returned verdicts for both compensatory and punitive damages. Only the latter verdict is appealed.

The award of punitive damages is supported by substantial clear and convincing evidence. Although General may have had a possible good faith basis to deny coverage, this should have been asserted and the claim denied many months earlier than when it filed its answer to MF's complaint more than one year after the fire. In any event, the jury apparently did not believe that the evidence sufficiently connected any arson to the plaintiffs. Given the facts, this was not unreasonable. General should have acted faster and denied liability or paid the proceeds and sued later if sufficient evidence of fraud by the insureds was developed. As to the amount awarded, General has not produced any evidence which would establish that the amount awarded, relative to General's net worth or to MF's damages, was too high. The judgment for $100,000 in punitive damages is therefore affirmed.