**Rodney WESTERS, Sr. and Diana Westers, Plaintiffs,**

v.

**AUTO–OWNERS INSURANCE COMPANY, Defendant.**

**No. TH 86–256C.**

United States District Court, S.D. Indiana, Terre Haute Division.

April 28, 1989.

Keith L. Johnson, Mann, Chaney, Johnson, Goodwin & Williams, Terre Haute, Ind., for plaintiffs.

Charles T. Jennings, Mark R. Smith, Jennings & Maas, Indianapolis, Ind., for defendant.

### ENTRY

TINDER, District Judge.

This cause comes before the court upon the defendant's Motion for Partial Summary Judgment. The court having reviewed the memoranda submitted by the parties and being duly advised hereby GRANTS defendant's Motion and enters summary judgment on the issue of punitive damages.

## BACKGROUND

On June 29, 1986, the plaintiffs home in Carlisle, Indiana was damaged by fire. At the time of the fire, the plaintiffs had a homeowners insurance policy with the defendant, Auto–Owners Insurance Company (Auto–Owners). The policy denominated as Policy No. 858902–09133325 provided coverage on the property as follows:

| | |
|---|---|
| Building | $35,000.00 |
| Contents | $17,500.00 |
| Additional Living Expenses | $ 7,000.00 |

There is evidence in the record that the policy at issue in this case had been cancelled in December, 1985 for non-payment of premiums. However, the plaintiffs paid the overdue premiums, the policy was reinstated and was in full force and effect at the time of the fire, although it was set to expire on July 2, 1986, just three days after the fire in question. In addition, the policy had not been renewed at that time, and the plaintiffs had not purchased a policy from another insurance carrier.

On June 30, 1986, the plaintiffs reported the fire loss to their agent, Maxine Keen. Ms. Keen advanced the plaintiffs $1,000.00 on their contents loss. Between June 30 and July 1, 1986, an Auto–Owners claims representative contacted the Carlisle fire department and was advised that arson was suspected, because of the existence of hot spots in the Westers' residence. In addition, Auto–Owners maintains that they were advised by the Fire Marshal's office that a flammable liquid was used to accelerate the fire. Auto–Owners alleges that they were verbally advised of the Fire Marshal's findings. The court notes that the actual report of the Fire Marshal indicates that the fire was accidental. However, there is a notation in the report that the investigation was reopened and that the report was to be amended. Nonetheless, no changes were actually made.

On July 2, 1986, Auto–Owners hired an independent investigator, Charles D. Skees, to investigate the cause of the fire in the Westers' home. On July 11, 1986, Mr. Skees submitted his report to Auto–Owners. In his report, Mr. Skees confirmed the suspicion of arson, noting that a flammable liquid was poured in various places in the home and that he had ruled out all accidental causes of the fire.

On July 15, 1986, Auto–Owners requested by correspondence that the plaintiffs submit the proof of loss required under the terms of the policy. On that date, Auto–Owners also forwarded correspondence to the plaintiffs reserving all rights under the policy and advising them that arson was suspected. On July 29, 1986, the plaintiffs filed their proof of loss with the defendant, making a claim for the following losses:

| | |
|---|---|
| Building | $14,000.00 |
| Contents | $17,500.00 |
| Additional Living Expenses | $ 7,000.00 |

On August 14, 1986, the plaintiffs provided their sworn statements following Auto–Owners request that they submit to the examination, as required under the policy. On September 4, 1986, Auto–Owners sent a letter to the plaintiffs denying their claim upon grounds of fraud, arson and false swearing. As a result, the plaintiffs instituted this action in Sullivan Circuit Court and the cause was removed to this court.

At the time of the fire in this case, the plaintiffs were suffering financial problems. Mr. Westers lost his job in May, 1986. The Westers had received disconnect notices for nonpayment of bills from the gas company, the electric company and the water company. The plaintiffs also failed to make their June house payment.

The itemized statement of loss filed by the Westers in this case indicated that the assets destroyed in the fire had a fair market value in excess of $17,500.00, the liability limit under the policy. In November, 1985, the plaintiffs filed a voluntary petition in bankruptcy, swearing that the fair market value of their personal property was $1,250.00. In addition, it should be noted that the itemized proof of loss claim in this case indicated the dates of purchase of the items claimed as lost in the fire. That list represented that the plaintiffs owned a substantial portion of the assets allegedly destroyed in the fire in November, 1985. Specifically, it indicated that they held assets far in excess of the $1,250.00 claimed on the bankruptcy petition.

## DISCUSSION

In *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986), the Supreme Court stated "we are convinced that the inquiry involved in ruling on a motion for summary judgement ... necessarily implicates the substantive evidentiary standard of proof that would apply at the trial on the merits." *Id.* at 252, 106 S.Ct. at 2512. That is, according to the *Anderson* court, the evidentiary burden of the party opposing the summary judgment is to be considered by the judge in ruling on the motion. The Supreme Court instructed that "in ruling on a motion for summary judgment, the judge must view the evidence presented through the prism of the substantive evidentiary burden.... The question ... is whether a jury could reasonably find *either* that the plaintiff proved his case by the quality and quantity of evidence required by the governing law *or* that he did not." *Anderson*, 477 U.S. at 254, 106 S.Ct. at 2513 (emphasis in original). In this instance, the defendant seeks summary judgment on plaintiffs' claim for punitive damages. It is well-settled in Indiana that proof by clear and convincing evidence is required when punitive damages are sought. *Bud Wolf Chevrolet, Inc. v. Robertson*, 519 N.E.2d 135 (Ind.1988); *Orkin Exterminating Co., Inc. v. Traina*, 486 N.E.2d 1019 (Ind.1986); *Travelers Indem. Co. v. Armstrong*, 442 N.E.2d 349 (Ind.1982). Therefore, in evaluating defendant's summary judgment motion in this case, it is incumbent upon this court to consider it in light of the clear and convincing standard of proof associated with a punitive damage claim in Indiana.

Punitive damages are not ordinarily recoverable in contract actions. *Vernon Fire & Casualty Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976). However, in *Vernon*, the Indiana Supreme Court enunciated two exceptions to the general rule. The court noted that punitive damages could be awarded in contract actions:

(1) where the conduct of the breaching party not only amounts to a breach of contract, but also independently establishes the elements of a common law tort such as fraud [or]

(2) alternatively, ... [where] it appears from the evidence as a whole that a serious wrong, tortious in nature, has been committed, but the wrong does not conveniently fit the confines of a predetermined tort.

*Id.* at 608, 349 N.E.2d at 180. In addition, the Indiana Supreme Court established in *Hibschman Pontiac, Inc. v. Batchelor*, 266 Ind. 310, 362 N.E.2d 845 (1977), that before punitive damages may be awarded under either exception, the public interest must be served by the deterrent effect of awarding punitive damages under the circumstances.

In *Vernon*, the Indiana Supreme Court was faced with a factual situation similar to the one in this case where insureds sought punitive damages from their insurance company for the failure to pay on a fire insurance claim. The trial court had awarded punitive damages based on the insurance company's bad faith failure to pay the claim. The Supreme Court reversed the award of punitive damages. In so doing, the *Vernon* court enunciated what has been termed the "right to disagree" rule:

Appellants acknowledge the foregoing rule allowing punitive damages, but maintain that their conduct in dealing with their insured reflects nothing more than a legitimate exercise of an insurer's "right to disagree" as to the amount of recovery.... It is evident that the exercise of this right may directly result in the intentional infliction of temporal damage, including the damage of interference with an insured's business (which an insured will undoubtedly consider to be oppressive). The infliction of this damage has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, i.e., the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable. Insurance companies burdened with such liability would either close their doors or increase premium

rates to the point where only the rich could afford insurance.

For these reasons, we agree that an insurer cannot be subjected to a punitive damage award for seeking *in good faith* to pay only the amount which the law requires to be paid under its contract. Insofar as defendants' conduct is ascribable to their good faith efforts to pay the legal proceeds, their conduct is privileged.

264 Ind. at 609–10, 349 N.E.2d at 181 (citation omitted) (emphasis in original).

The parameters of the "right to disagree" rule have been established by case law. In *Hoosier Ins. Co., Inc. v. Mangino*, 419 N.E.2d 978 (Ind.App.1981), the Indiana Court of Appeals recognized that in order to infer malice or oppressive conduct from an insurance company's failure to pay a claim there must be a complete "[a]bsence of any reasonable grounds for denying liability...." *Id.* at 983. The court recognized that where circumstantial evidence of arson exists the insurance company has reasonable grounds to deny the insured's claim. The Hoosier court stated:

[o]ur reading of *Rex [Ins. Co. v. Baldwin*, 163 Ind.App. 308, 323 N.E.2d 270 (1975)] and *Vernon* leads us to the conclusion that an insurance company is not required to either pay or litigate at its peril. *Those cases permit an insurance company upon pleading a good faith defense, to deny liability without incurring the risk of punitive damages, even in instances where its defense fails.*

*Id.* at 988 (emphasis added).

In *Riverside Ins. Co. v. Pedigo*, 430 N.E. 2d 796 (Ind.App.1982), the Indiana Court of Appeals upheld the award of punitive damages against the insurance company for its bad faith in failing to pay its insureds' claim. In *Riverside*, the court recognized that the insurance company's failure to inform the insureds of its suspicion of arson and the failure to tell the insureds that the company was denying the claim on the basis of arson, in conjunction with the insurance company's false representation that the claim was being denied because of alleged defects in the proof of loss claims,

were sufficient to defeat the company's reliance on the "right to disagree rule" to avoid the imposition of punitive damages. The *Riverside* court stated:

Riverside's actions—involving misrepresentation and concealment by the insurer of an [arson] investigation based on perishable physical evidence—were an appropriate basis for the deterrence objectives of punitive damages, and are clearly outside the "right to disagree" rule....

*Id.* at 808.

Similarly, in *Hamed v. General Accident Ins. Co.*, 842 F.2d 170 (7th Cir.1988), the Seventh Circuit Court of Appeals recognized an outside limit to an insurance company's ability to rely on a liability dispute to avoid the imposition of punitive damages. In *Hamed* the insurance company was very slow in processing and denying the plaintiffs' claim. There was no mention of an arson investigation and General did not deny coverage until nearly a year after the plaintiff filed his proof of loss. The Seventh Circuit found the delay in processing the claim and denying liability "unreasonable" and affirmed the imposition of $100,000.00 in punitive damages. *Id.* at 174–75.

■ The case at bar falls squarely within the "right to disagree" rule. There is sufficient circumstantial evidence to support the insurance company's suspicion of arson when the plaintiffs' poor financial condition is considered with the evidence of the incendiary origin of the fire. Circumstantial evidence is sufficient to establish proof of arson in Indiana. *Hoosier Ins.*, 419 N.E.2d at 986; *Gregory's Continental Coiffures & Boutique, Inc. v. St. Paul Fire & Marine Ins. Co.*, 536 F.2d 1187, 1191–92 (7th Cir.1976). Therefore, Auto–Owners had a reasonable basis to question liability in this case.

The insureds herein were informed in the reservation of rights letter dated July 15, 1986 that arson was suspected. Nonetheless, the company acted promptly in processing the claim. The insureds submitted their proof of loss claim on July 29, 1986 and on September 4, 1986 Auto–Owners

denied the claim on the basis of fraud, arson, and false swearing, just over one month after receiving plaintiffs' proof of loss claim.

■ Even if Auto–Owners fails to establish its arson defense at the trial on the merits in this case, no reasonable jury could find by clear and convincing evidence that the company's conduct in processing and denying the claim falls outside the bounds of the "right to disagree" rule.[1] The insureds were aware of the liability dispute in this instance. Therefore, they have been afforded notice of the arson claim sufficient to permit them an opportunity to defend against it at trial. In *Vernon*, the Indiana Supreme Court clearly adopted the position that an insurance company could question liability in good faith without risking exposure to punitive damages. Auto–Owners investigation, processing and denial of the claim in this instance was conducted within the bounds of the good faith rule. Therefore, as shown by the evidence produced at the summary judgment stage, the plaintiffs cannot present clear and convincing evidence of bad faith denial of coverage in this case. Therefore, their claim for punitive damages must fail and defendant's Motion for Partial Summary Judgment is hereby GRANTED.

---

1. Diana Westers maintains that a good faith basis for denial of her punitive damage claim cannot arise from the arson defense asserted against her husband, because Auto–Owners has not asserted that she was involved in the alleged arson. However, under Indiana law an innocent spouse is precluded from recovering on a fire insurance policy where there is evidence that both spouses will share in the proceeds of the insurance. *Fuston v. Nat'l. Mut. Ins. Co.,* 440 N.E.2d 751, 754 (Ind.App.1982). In this case, Mrs. Westers admitted in her answers to interrogatories that the payment of the claim would benefit each spouse, because the money would be used to replace the property destroyed in the fire. Therefore, under the "right to disagree" rule, Auto–Owners is shielded from liability for punitive damages as to both spouses in this case.