**Donald GRAY and Geneva Gray, Plaintiffs,**

v.

**AMERICAN FAMILY MUTUAL INSURANCE COMPANY, Defendant.**

**No. IP 92–391–C.**

United States District Court, S.D. Indiana, Indianapolis Division.

May 10, 1993.

David E. Cook, Samper Hawkins Atz and Cook, Indianapolis, IN, for plaintiffs.

Michael E. Brown, Indianapolis, IN, for defendant.

## ENTRY AND ORDER

STECKLER, District Judge.

This matter comes before the Court on the plaintiffs' Complaint, which was filed in the Marion County (Indiana) Superior Court and subsequently removed on the basis of the diversity jurisdiction, the defendant's Answer, the defendant's Motion for Partial Summary Judgment and Brief in Support thereof, the plaintiffs' Response and Objection to defendant's Motion and Brief in Support thereof, and the defendant's Reply Brief. The Court having carefully considered the parties' pleadings and papers, and being duly advised, concludes that the defendant's Motion for Partial Summary Judgment must be granted.

### I. *Factual Background*

On or about May 3, 1990, American Family Mutual Insurance ("American Family") issued a homeowners' insurance policy on Donald and Geneva Gray's residence. *Complaint,* p. 2, ¶ 3. The Grays' residence, which was located at Rural Route 1, Box 126, in Gosport, Indiana, was apparently built by Donald Gray. *Id.* The applicable policy limits were sixty-five thousand dollars ($65,000) for loss of dwelling, and forty-eight thousand dollars ($48,000) for loss of personal property on the premises and actual loss of use sustained within twelve months of an occurrence. *Plaintiffs' Insurance Policy* (No. 13–P68270–01), p. 1 (attached as *Exhibit A* to *Plaintiffs' Complaint* )

On December 17, 1990, a fire destroyed the Grays' residence and most of the personal belongings they had accumulated in forty-three years of marriage. *Plaintiffs' Answers to Interrogatories,* p. 6, no. 10. The parties do not dispute the fact that the Grays had paid their insurance premiums, that their policy was in effect at the time of the fire, and that they immediately notified American Family, through its agent J.J. McGinnis, of the occurrence. As of the date of this Entry and Order, American Family has not yet determined whether it will pay the Grays' claim.

Approximately two weeks after the fire, American Family's agent, Ray Slagle, arranged a meeting with the Grays at a Mc-

Donalds' restaurant on the west side of Indianapolis. Slagle separately interviewed the Grays at that time. According to the Grays, Slagle made remarks during the meeting to the effect that Donald Gray had been responsible for the fire which had destroyed the Grays' residence and most of their personal belongings, and he (Slagle) upset Geneva Gray to the point of tears. *See Affidavit of Donald Gray*, p. 2, ¶ 4; *Affidavit of Geneva Gray*, pp. 1–2, ¶¶ 3–5.

While the Grays estimate that the market value of their residence was approximately one-hundred thousand dollars, *Plaintiffs' Answers to Interrogatories*, p. 7, no. 11; *Plaintiffs' Statement of Special Damages*, p. 1, ¶ 2, American Family's investigation led it to conclude that the residence had been significantly overvalued. Count II of the Grays' Complaint states that American Family's adjuster informed them on or about March 25, 1991, that there was "an insurable interest problem" in this case. *Complaint*, p. 4, ¶ 5.[1]

On September 13, 1991, American Family requested that the Grays produce documents relating to the title to the real estate upon which their residence had ·been situated, as well as records pertaining to their bank accounts. *Letter of September 13, 1991* (attached as *Exhibit B* to *Defendant's Motion for Summary Judgment*). Concerned over issues such as who had an insurable interest in the residence; the Grays' financial situation (including the fact that they had previously filed for bankruptcy); and possible misrepresentations by Donald Gray in the Grays' application for insurance, American Family informed the Grays on November 25, 1991 that "[n]o determination ha[d] been made that the[ir] claim will not be honored because of these problems at this time[.]" *Letter of November 25, 1991*, pp. 1–3 (attached as *Exhibit C* to *Defendant's Motion for Summary Judgment*).

On March 16, 1992, the Grays filed their Complaint in the Marion County (Indiana) Superior Court, *Notice of Removal*, p. 2, ¶ 3,

alleging that they are entitled to compensatory and punitive damages as a result of American Family's willful breach of the parties' contract of insurance. *Complaint*, pp. 3, 6. Count II of the Grays' Complaint pertains to their claim for punitive damages. *Id.*, at 4–7. This cause of action was removed on April 2, 1992.

During January of 1993, the Grays, who had in July and November of 1991 provided *some* documents which were responsive to American Family's request for additional information, finally signed an authorization form permitting American Family to obtain financial records and certain tax information which it required to evaluate the Gray's claim. *Letter of February 1, 1993* (attached as *Exhibit E* to *Defendant's Motion for Summary Judgment*).

On or about January 11, 1993, the Grays served their answers to American Family's interrogatories upon opposing counsel. The same provided, in pertinent part, as follows:

INTERROGATORY NO. 27: Itemize each separate basis on·which the plaintiffs seek to recover punitive damages against this defendant and the facts upon which you rely and, as to each state:

a. the identity of any document evidencing such facts; and

b. the name and address of any person with knowledge of said fact.

ANSWER: DG and GG: That the defendants in this cause entered into a contract of insurance with us for the home we built in Gosport, Indiana. They accepted our premiums and provided the coverage. When the loss occurred[,] the agents of the defendants made comments to us that inferred Don Gray may have committed arson. The defendant has from the date of this fire loss wrongfully withheld payment of our claim. We have had extra living expenses that were covered but never reimbursed.

We have complied with their requests to the best of our ability but they have stead-

---

1. The pertinent provision of the Grays' policy provided as follows:

 2. **Insurable Interest and Our Liability.** In the event of a covered loss, **we** will not pay for more than the insurable interest an **insured**

has in the covered property, nor more than the amount of coverage afforded by this policy in any one loss.

*Plaintiffs' Insurance Policy*, p. 7, Section 1 (Conditions), ¶ 2

fastly refused to pay any claim. We have provided documents, given statements, met with insurance adjusters and submitted to depositions. We have covered all our own expenses and we still have not even had an offer to settle our claim. We have now had to employ an attorney and the defendant still has not accepted or denied our claim.

We rely on our insurance contract with the defendant.

*Plaintiffs' Answers to Interrogatories*, pp. 12–13 (attached as *Exhibit A* to *Defendant's Motion for Summary Judgment* ). As noted above, American Family apparently has not yet decided whether it will honor the Grays' claim.

On March 1, 1993, American Family filed its Motion for Partial Summary Judgment, arguing that the Grays are not entitled to punitive damages. In response to American Family's Motion, the Grays filed affidavits which American Family asserts contradict the Grays' previous deposition testimony and are insufficient to raise a genuine issue of material of fact.[2]

## II. *Discussion and Decision*

### A. *Standard of Review*

Rule 56 of the Federal Rules of Civil Procedure states that summary judgment shall be granted forthwith if the parties' pleadings and discovery "show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." *Fed.R.Civ.P.* 56(c). *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248–49, 106 S.Ct. 2505, 2510, 91 L.Ed.2d 202 (1986); *see Russo v. Health, Welfare & Pension Fund, Local 705*, 984 F.2d 762, 765 (7th Cir.1993).

In determining whether a genuine issue of material fact exists, the trial court must view the record and all *reasonable* inferences drawn therefrom in the light most favorable to the nonmoving party. *Spring v. Sheboygan Area School District*, 865 F.2d 883, 886 (7th Cir.1989). "A genuine issue of material fact exists only where 'there is sufficient evidence favoring the nonmoving party for a jury to return a verdict for that party.'" *Wolf v. Fitchburg*, 870 F.2d 1327, 1329 (7th Cir.1989) (*quoting Anderson*, 477 U.S. at 249, 106 S.Ct. at 2511). In other words, summary judgment may be granted if the evidence favoring the nonmoving party "is merely colorable or is not significantly probative." *Bostic v. Chicago*, 981 F.2d 965, 969 (7th Cir.1992) (*quoting Anderson*, 477 U.S. at 249–50, 106 S.Ct. at 2511 (citation omitted)). Furthermore,

> Rule 56(e) itself provides that a party opposing a properly supported motion for summary judgment may not rest upon mere allegation or denials of his pleading, but must set forth specific facts showing that there is a genuine issue for trial.... [T]he plaintiff must present affirmative evidence in order to defeat a properly supported motion for summary judgment.

*Anderson*, 477 U.S. at 256–257, 106 S.Ct. at 2514; *see First Bank Southeast, N.A. v. Predco, Inc.*, 951 F.2d 842, 846 (7th Cir.1992).

### B. *Availability of Punitive Damages*

■ American Family argues that the Grays are not entitled to recover punitive damages even if they were to prevail at trial. Specifically, American Family argues that the Grays have failed to introduce any evidence of conduct on American Family's part which would warrant such an award. The

2. American Family asserts that Donald Gray's recently-filed affidavit, specifically the sentence wherein Gray stated that Slagle had *directly accused him of arson*, contradicts his previous deposition testimony as well as one of the Grays' answers to American Family's interrogatories, because the Grays were on these previous occasions asserting that Slagle had made a statement (or statements) to the effect that Donald Gray *"may have committed arson." Defendant's Reply Brief*, pp. 4–6 (emphasis added).

American Family has not moved to strike the allegedly offending averment in Donald Gray's affidavit, however, and the Court chooses not to do so *sua sponte*. As American Family argues in its Reply Brief, the Grays' affidavits do not raise a genuine issue of material fact even if they are considered because they do not allege the existence of an independent tort. The only independent tort which suggests itself is libel or slander and, as American Family observes, in order to prevail on such a theory a plaintiff must prove that there has been publication to third parties. *See Delval v. PPG Industries, Inc.*, 590 N.E.2d 1078, 1081 (Ind.App.), *trans. den.* (Ind.1992).

Grays, on the other hand, submit that genuine issues of material fact remain with respect to the issue of punitive damages. The Grays' entire argument in opposition to American Family's Motion is as follows:

> Here the material facts are whether the defendant had any legitimate reason to delay accepting or denying plaintiffs' claim; whether the plaintiffs cooperated with the defendant's requests in a timely fashion so as to make defendant's delays unreasonable; and whether the defendant's conduct since the date of loss including direct accusations of criminal conduct on [the part] of the plaintiffs, changing theories of denial and the failure to accept or deny the claim approximately one (1) year after the loss, thereby forcing plaintiffs to file suit, is oppressive and in bad faith such as to warrant a judgment of punitive damages.

*Brief in Support of Plaintiffs' Opposition to Motion for Partial Summary Judgment*, pp. 5–6.

In *Pittman v. Republic Franklin Insurance Co.*, 787 F.Supp. 151, 152 (S.D.Ind. 1992), the court summarized the principles which are applicable in the present context:

> In order [for an insured] to establish [their] entitlement to punitive damages[, the insured] must prove by clear and convincing evidence that [their insurer's] refusal to pay [their] claim under the policy was done in bad faith. *Westers v. Auto-Owners Ins. Co.*, 711 F.Supp. 946 (S.D.Ind. 1989); *Vernon Fire & Casualty Ins. Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (Ind. 1976). This burden of proof is reflective of the fact that under Indiana law, insurance companies enjoy a "right to disagree" about the amount of proceeds owed to their insureds. "Insofar as [insurers'] conduct is ascribable to their good faith efforts to pay the legal proceeds, their conduct is privileged." *Vernon*, 349 N.E.2d at 181.

*Id.* (emphasis added); *See Indiana Insurance Company v. Plummer Power Mower & Tool Rental, Inc.*, 590 N.E.2d 1085, 1093 (Ind.App.1992) ("Evidence of reliance upon incorrect, but reasonable, theories is not sufficient to justify an award of punitive dam-

ages."); *Great Horizons v. Massachusetts Mutual Life Insurance Co.*, 457 F.Supp. 1066, 1081 (N.D.Ind.1978), *aff'd* 601 F.2d 596 (7th Cir.1979).

Recently, on February 11, 1993, the Indiana Supreme Court handed down its opinion in *Miller Brewing v. Best Beers of Bloomington, Inc.*, 608 N.E.2d 975, 984 (Ind. 1993), clarifying Indiana law regarding punitive damages in actions based upon breach of contract. Writing for a divided court, Justice Krahulik concluded as follows:

> We hold that in order to recover punitive damages in a lawsuit founded upon a breach of contract, the plaintiff must plead and prove the existence of an *independent tort* of the kind for which Indiana law recognizes that punitive damages may be awarded.

*Id.* (emphasis added). The *Miller* Court clearly rejected the notion, which had been embraced by this Court in *Westers* and *Pittman* based upon the Court's interpretation of *Vernon Fire & Casualty* and its progeny, that punitive damages may be awarded for conduct which was "*essentially tortious* even though not fitting the precise elements of a predefined tort[.]" *Id.* (emphasis added).

The rationale behind granting insurance companies a "right to disagree" was discussed in *Burleson v. Illinois Farmers Insurance Co.*, 725 F.Supp. 1489, 1497 (S.D.Ind. 1989):

> The infliction of [temporal] damage [caused by an insurer's exercise of their right to disagree] has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, i.e., the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable. Insurance companies burdened with such liability would either close their doors or increase premium rates to the point where only the rich could afford insurance.

*Id.* (*quoting Vernon Fire*, 349 N.E.2d at 181).[3]

---

3. In *Burleson*, Judge McKinney noted that insureds are protected from "bad faith delay" un-

The Grays' argument that they are entitled to recover punitive damages must be rejected in view of the fact that they have failed to allude to any evidence of conduct on the part of American Family which would warrant such an award, and because the Grays have failed to plead and prove the existence of an independent tort as required by *Miller.* *See also Erie Insurance Company v. Hickman,* 610 N.E.2d 283 (Ind.App.1993) (rejecting, based upon the *Miller* Court's analysis, the plaintiffs' argument that they were entitled to punitive damages as a result of their insurer's failure to cooperate and their insurer's delaying action on claim during arbitration of the same).

 As *Pittman, Burleson* and *Westers* indicate, an insurance company is entitled to investigate a claim filed under one of its policies without subjecting itself to punitive damages merely because it subsequently turns out that their insured's claim has merit. While there has concededly been some delay in processing the Grays' claim, the Grays appear to bear significant if not primary responsibility for the same. Only recently did they accede to American Family's request for information. While the Grays provided a number of documents pursuant to American Family's request, they did not comply fully until they signed the Authorization for Release of Financial Information. *Authorization dated January 29, 1993* (attached as *Exhibit C* to *Defendant's Reply Brief* ); *Letter of February 1, 1993* (attached as *Exhibit E* to *Defendant's Motion for Partial Summary Judgment* ); *Letter of November*

*ber 4, 1991* (attached as *Exhibit 4* to *Plaintiffs' Response and Objection to Defendant's Motion for Partial Summary Judgment* ).[4]

The Court agrees that legitimate disputes remain regarding coverage under the Grays' homeowners' policy, and that the Grays' failure to cooperate fully has hampered American Family's efforts to resolve this matter.[5] According to Donald Gray, in May of 1991 he was informed by his counsel that American Family required more information about the transfer of the Grays' property to Betty J. Stoner, who was listed as an additional insured on the Grays' May 3, 1990 insurance policy, and the July of 1991 retransfer from Stoner to the Grays (Stoner's name was removed from the Grays' homeowners' policy by rider on August 26, 1990). American Family's concern, which centered around the question of who had proper title to the property (specifically whether Ms. Stoner had an interest in the same) is understandable under the circumstances.

The Grays' answers to American Family's questions regarding Betty Stoner provide some of the justification for American Family's suspicion of arson. Early on, in responding to American Family's questions regarding Stoner, the Grays informed American Family that Donald Gray was on disability and was not permitted to earn income, and that their property had been placed in Geneva Gray's maiden name (Stone) so that any rental income earned from the property "would not be traced" to Donald Gray. *Letter of September 13, 1991,* p. 2 (attached as

---

der Indiana law. An insured may bring an action for bad faith breach of contract and be awarded compensatory and punitive damages in an appropriate case, or the insured may assert a claim under Indiana's Unfair Claim Settlement Practices Act (Indiana Code § 27–4–1–1, *et seq.* ). *Id.,* 725 F.Supp. at 1498. Additionally, Judge McKinney noted that "[o]rdinary delay in good faith cases is not completely without cost for insurers, for [ . . . ] they remain liable for prejudgment interest in such cases." *Id.* (*citing* Annot., *Insured's Right to Recover From Insurer Prejudgment Interest on Amount of Fire Loss,* 5 A.L.R. 4th 126 (1982)).

**4.** American Family argues that it required the Grays' financial information in order to properly evaluate their claim. Such information is relevant for at least two different reasons. Review of

the Grays' financial information both permits a determination of whether the Grays were in fact making payments to Stoner and, assuming that the financial information demonstrates that the Grays were in "poor financial condition" and American Family is able to introduce some evidence of "the incendiary origin of the fire," it will constitute "sufficient circumstantial evidence to support the insurance company's *suspicion* of arson." *Westers v. Auto–Owners Insurance Co.,* 711 F.Supp. 946, 949 (S.D.Ind.1989).

**5.** The *Grays' insurance policy provided that in the event of a covered loss the insured is required to "provide [American Family] with records and documents [they request] and permit [them] to make photocopies." (*Plaintiffs' Insurance Policy,* p. 7, ¶ 3(c)(2) attached as *Exhibit A* to the *Plaintiffs' Complaint* ).

*Exhibit B* to *Defendant's Motion for Summary Judgment* ); *Letter of November 25, 1991,* p. 1 (attached as *Exhibit 5* to *Plaintiffs' Response* ). The Grays subsequently maintained that they had borrowed a substantial sum of money (approximately $40,000, to be repaid at a rate of $650.00 a month) from Stoner, who, they submit, was a friend of Donald Gray's mother. The Grays claim that there exists no evidence (such as a note) of their agreement with Stoner to borrow such a large sum of money, and that after they filed for bankruptcy protection, they signed their property over to Stoner as collateral for their debt. *Letter of July 31, 1991,* p. 1 (attached as *Exhibit 2* to *D. Gray Affidavit* ). The Grays further claim to have repaid the loan in late September or early October of 1990, and they submit that Stoner's name was removed from their homeowner's policy on November 6, 1990. *Id.,* p. 2. They claim that Ms. Stoner must be travelling as they have been unable to get in touch with her since that time.

American Family's counsel summarized the basis of his client's concern in his November 25, 1991 letter to the Grays' counsel:

> The inconsistency of these two stories caused the insurance carrier to want to explore the question further. As they explored it further the story frankly seemed more and more unusual. The loaning of the money by Ms. Stoner then the sudden disappearance of this person a few months before the fire occurs so that no one can confirm what took place.

*Letter of November 25, 1991* pp. 1–2 (attached as *Exhibit 5* to *Plaintiffs' Response* ).

American Family also became concerned about the legitimacy of the Grays' claim given what it perceived as an inaccurate description of the residence by Donald Gray (specifically, Donald Gray's contention, which the adjuster found to be false during an inspection of the residence, that the garage floor included a four inch concrete slab), and the fact that the repair estimates substantially exceeded the appraised value of the Grays' residence.

Finally, American Family remains concerned about alleged misrepresentations by Donald Gray in his signed application for insurance. American Family alleges that the Grays incorrectly answered (under oath) questions regarding whether they had prior insurance losses and whether they had ever filed for bankruptcy. *Letter of November 25, 1991,* p. 2 (attached as *Exhibit 5* to *Plaintiffs' Response* ). American Family eventually discovered, contrary to representations made by the Grays at the time they completed their application for homeowners' insurance, that the Grays had indeed previously filed bankruptcy, and that they claimed to have suffered a "total loss burglary" in 1985 in the amount of $52,000. American Family summarized its concerns regarding this particular alleged misrepresentation in its letter of November 25, 1991:

> Questions of misrepresentation aside, certainly the occurrence of a burglary in 1985 of everything [Donald Gray] owns[,] which the bankruptcy itself describes as having been uninsured raises substantial questions about [Donald Gray's] ability while disabled to completely refurnish the house and make a claim now for a substantial amount of contents.

*Letter of November 25, 1991,* p. 2 (attached as *Exhibit 5* to *Plaintiffs' Response* ). These factors justify American Family's refusal to honor the Grays' claim until after it is able to complete its investigation.

The crux of the Grays' claim that they were harmed by the delay in processing their claim under the aforementioned policy is set out in Donald Gray's affidavit:

> Defendant and its agents' conduct was oppressive by accusing me and my family of arson without cause and *continuing to defer action on my claim with the reasonably inferred intent to cause me to waive any legal action pursuant to the one (1) year statute of limitations clause of the insurance contract.*

*Affidavit of Donald Gray,* p. 6, ¶ 16(c) (emphasis added). American Family points out, correctly in this Court's view, that the Grays have omitted mention of a significant detail which compels the Court to reject their argument. Prior to the initiation of this suit, American Family unilaterally extended by ninety days the one year statute of limitations which is set out in the parties' contract of insurance. *Letter of December 17, 1991*

(attached as *Exhibit D* to *Defendant's Reply Brief*). Additionally, the Grays apparently downplay the significance of their refusal, until recently, to provide the financial information requested by American Family. Significantly, even if American Family had not extended the one year statute of limitations, the Court would nevertheless conclude that there is simply no evidence in this case to support the Grays' contention that American Family delayed resolving their claim "[in order to] cause [the Grays] to waive any legal action."

The Court concludes that there is simply no principled basis which would justify an award of punitive damages in the present case. Previous cases wherein punitive damages awards were affirmed based upon insurers' delay in processing their insureds' claims are distinguishable. By way of example, this case is distinguishable from *Hamed v. General Accident Insurance Co.*, 842 F.2d 170, 172–175 (7th Cir.1988), and *Riverside Insurance Co. v. Pedigo*, 430 N.E.2d 796, 808 (Ind.App.1982), the two cases which were discussed in *Pittman*. First, the Grays were not misled by American Family into believing that the only problem with their claim was the extent of the loss they had suffered. Second, there is no evidence that American Family misrepresented its position to the Grays as regards its suspicion that the Grays' residence was destroyed by arson. Finally, the Grays have not established that they were in any way prejudiced by the delay in processing their claim. *Hamed*, 842 F.2d at 174–175. Two weeks after the fire which destroyed their residence, the Grays were informed by American Family's agent (somewhat indelicately, if what the Grays assert in their Complaint is accurate) that their claim was in dispute.

### III. *Conclusion*

For the foregoing reasons, the Court concludes that the defendant's Motion for Partial Summary Judgment must be granted. The Grays are not entitled to proceed on their claim of punitive damages.

IT IS SO ORDERED.

