MERIDIAN MUTUAL INSURANCE COMPANY v. DAVID F. McMULLEN, ET. UX.

[No. 1171A227. Filed May 18, 1972.]

*C. Wendell Martin, Bredell, Martin & McTurnan,* of Indianapolis, for appellant.

*James R. White,* of New Castle, for appellees.

LOWDERMILK, J.—This is a case in which plaintiff-appellee, David F. McMullen, with his family, owned and lived in a house in Middletown, Indiana. He had worked for Delco-Remy at Anderson, Indiana, for about four and one-half years immediately preceding February 24, 1970. While working at Delco-Remy McMullen also worked with his father in the electrical contracting business in Middletown, and at the time of the fire he had a small store in connection with his residence in which he sold electrical fixtures.

On January 5, 1970, while the plaintiff-appellee was at work and while his wife was gone, there was a fire.

Precedent to the fire McMullen had entered into a contract with Meridian Mutual Insurance Company for fire and other insurance on the home. The policy of insurance between the parties contained the following language:

"* * * this Company, * * * does insure the Insured named in the Declarations above * * *, to the extent of the actual cash value of the property at the time of loss, but not exceeding the amount which it would cost to repair or replace the property with material of like kind and quality within a reasonable time after such loss, without allowance for any increased cost of repair or reconstruction by reason of any ordinance or law regulating construction or repair, * * * against all DIRECT LOSS BY FIRE, * * * to the property described herein * * *."

Upon learning of the fire plaintiff-appellee contacted Meridian Mutual, who had informed him, by their agent, that his policy covered additional living expenses in such a situation as he now found himself. Plaintiff-appellee checked with Holiday Inn and learned that it would cost $16.00 per day for Mrs. McMullen, their baby and himself to stay in a Holiday Inn.

At the time of trial the plaintiff-appellee had not received

any cost of living expense from the insurance company and the company, by its own admission, owed him $896.00 for the eight weeks during which his family stayed with his father.

George Vandergrift, the insurance agent who sold Mr. McMullen the insurance, came over the morning after the fire and assured him he had nothing to worry about and everything would be taken care of.

At the request of one Mr. Gossett, the defendant-appellant's adjuster, Mr. McMullen obtained an estimate of the cost of repairs to the house from a contractor in Middletown. That estimate was in the neighborhood of $5,000.00.

Despite this estimate obtained by plaintiff-appellee, he agreed to let the defendant-appellant substitute a contractor from Muncie who was later paid $3,300.00 for repairing the home.

Throughout the process of repairing the home the plaintiff-appellee made different substitutions for what the house had originally contained, such as replacing cherry paneling with drywall, et cetera.

The plaintiff-appellee incurred additional expenses of cleaning his clothes, drapes, and other household furniture.

Plaintiff-appellee incurred several additional expenses, some of which were not previously approved by the insurance company.

At the time of the fire plaintiff-appellee had two sources of income; $125.00 per week from Delco-Remy and about $100.00 per week because of work he did for his father. His wife was making about $150.00 a week at the time by working at the Lucky Steer in Anderson. On February 24, 1970, plaintiff-appellee was put on sick leave by Delco-Remy. His discomfort "started right after the fire, with pain in the chest and left side of the chest cavity, and it eventually spread into the arm and weakness, tiredness and hard to get your breath." Though he had a nervous condition prior to February 24, 1970, for

which he was treated with tranquilizers due to overwork, he had never experienced this particular condition before.

After the plaintiff-appellee was laid off, he was referred by the plant doctor to a psychiatrist. He was put in the hospital in March, 1970, and was in there for ten days. The doctor testified that plaintiff-appellee had a previous heart condition, tachycardia, and was at that time suffering from the same. After his discharge from the hospital he took anti-biotics and a tranquilizing drug. His employment with Delco-Remy is now terminated. He was in the hospital on three occasions after the fire, the first time was in March, 1970, the second time was the latter part of October, 1970, and the third time was the last of November, 1970.

The doctors who attended plaintiff-appellee testified that at the time of hospitalization he suffered from acute depression which they determined was the result of his anxiety over his financial condition.

The differences between plaintiff-appellee and the defendant-appellant first came about because of a question as to the amount of depreciation which the plaintiff-appellee should sustain on the part of his draperies, carpet, and other property which was lost or damaged in the fire.

The evidence discloses that drafts were issued in payment of the plaintiff-appellee's fire loss for the following items and for the following amounts:

| Date | Payee | Amount |
|---|---|---|
| 2/25/70 | Randolph Cleaners | $ 294.00 |
| 3/23/70 | Gavin Hardware | 10.34 |
| 3/23/70 | Virginia's | 810.65 |
| 3/25/70 | Universal Electric Company | 336.49 |
| 3/25/70 | H. E. Austin Co. | 3,303.18 |
| 2/25/70 | Sanders TV | 26.50 |
| | Total | $4,781.16 |

During the time plaintiff-appellee was in the hospital in March, 1970, Mr. Gossett came to the hospital and offered him $692.74 as the balance due on the fire loss.

In adjusting the fire loss adjuster Gossett depreciated the clothing items, draperies, the sheers and the valances at 35%. He depreciated an upholstered chair 28%. Payment for said chair was included in the final draft tendered to plaintiff-appellee in the amount of $692.74.

The plaintiff-appellee, upon suing the defendant-appellant, stated his cause in two Paragraphs. The first Paragraph was for damages to the property in which he prayed damages in the amount of $4,500.00 for alleged failure of the defendant-appellant to comply with the terms of the insurance policy in the adjustment of the first loss.

Legal Paragraph II of the plaintiff's complaint prayed damages in the amount of $10,000.00 for harassment and bother caused the plaintiff by the company's alleged refusal to pay the plaintiff a sufficient sum of money to compensate him for his damages, and from which harassment the plaintiff became ill and lost his job at Delco-Remy.

The cause was submitted to a trial by jury, which awarded plaintiff-appellee the sum of $4,000.00 on the first Paragraph of complaint and $5,000.00 on the second Paragraph of complaint, on both of which the court duly entered judgment.

Defendant-appellant timely filed its motion to correct errors directed to the judgment, of which the trial court sustained the same as to legal Paragraph I and overruled the same as to legal Paragraph II.

This appeal followed as to legal Paragraph II of the complaint and the errors claimed are as follows, to-wit.

5. That the verdict of the jury was not supported by sufficient evidence.

"6. The verdict of the jury and the judgment of the Court was contrary to law for the reason that under the pleadings, the contract of insurance, and the evidence, the damages requested in legal Paragraph II of the complaint are not authorized by the law of Indiana in that they are not proximately caused by the actions and conduct of the defendant, as shown by the evidence."

Plaintiff-appellee contends that defendant in no way objected to plaintiff's legal Paragraph II of complaint, but filed answer in denial thereto, made no objection to evidence thereon, at no time properly requested the withdrawal of the issue of special damages from the jury and cannot for the first time raise the issue in a motion to correct errors.

Plaintiff-appellee further submits that the defendant is prohibited from raising the issue of "special damages" for the very first time in its motion to correct errors and further submits that the defendant-appellant did not raise that question in its motion to correct errors for the following reasons:

> "Item #6 of said motion to correct error is evidently an attempt to raise the question that the verdict and judgment is contrary to law in conformity to Indiana Rules of Court, Trial Rule 59(A). However, sub-section (8) of said Trial Rule 59(A) specifically demands that he who raises this issue specifically point out the insufficiency or defect. The only insufficiency or defect here pointed out is that the damages of Plaintiff in Paragraph II are not authorized because they were *not proximately caused* by the actions and conduct of the defendant. (emphasis supplied)"

With plaintiff-appellee's contention we cannot agree, the first reason being that because of the liberal construction which this court has adopted in construing Rule TR. 8(E) (1), TR. 8(F) and TR. 59(A) (4) through 59(A) (8); the second reason being that the defendant-appellant's motion for judgment on the evidence at the close of all the evidence moved the court to withdraw the evidence from the consideration of the jury and to instruct the jury to return a verdict for the defendant as to pleading Paragraph II of the complaint on the following grounds, to-wit:

> "1. Punitive or exemplary damages are not recoverable in a breach of contract action.
> "2. Punitive damages are recoverable only when defendant's acts complained of are accompanied by aggravating circumstances such as malice, oppression, fraud or deceit. Plaintiff failed to prove any aggravating circumstances such as malice, oppression, fraud or deceit. Plaintiff has failed

to prove any aggravating circumstances or wrongful acts which were wilfully done in a wanton or oppressive manner, or done with reckless disregard of the rights of plaintiff herein."

In answer to plaintiff-appellee's contention that no question was saved by the defendant-appellant's failure to object to evidence of witness David McMullen and witness Dr. Foley, we have necessarily gone to the transcript and are unable to find any questions asked Mr. McMullen or Dr. Foley which amounted to aggravating circumstances, such as malice, oppression, fraud or deceit, or wrongful acts which were done in a wanton or oppressive manner or done with reckless disregard of the rights of the plaintiff-appellee. There having been no questions of these witnesses which called for an objection on the part of the defendant-appellant as a defense to the second legal Paragraph of complaint there was nothing to object to. The proper procedure would have been an objection had an improper question been asked under the pleadings and pursuant to the terms of the contract provisions and it would have been incumbent upon the defendant-appellant to have moved to have stricken the answer for the purpose of objection, stating its reasons for the objection. Then, had the court sustained the objection, the defendant-appellant should have moved the court to have instructed the jury to disregard the answer to the improper question and at that time there would have devolved upon the trial judge the duty to have so admonished the jury. For the reasons hereinabove stated, it is our opinion that the defendant-appellant properly saved its question.

7. The jury awarded excessive damages.

9. Failure of the court to grant the defendant's motion for judgment on the evidence at the close of all the evidence as it pertained to legal Paragraph II of the complaint.

10. and 11. Failure of the court to give defendant's tendered instruction and error of the court in giving plaintiff's tendered instructions.

We need only consider one of the alleged errors in the motion to correct errors, since we have determined that the trial court did err, since the evidence did not show that the purported damages were within the contemplation of the parties and there was not a showing of malice, oppression, fraud, or deceit on the part of Meridian Mutual Insurance Company to justify punitive damages.

The defendant-appellant has stated in its brief that:

"The issue in this appeal is whether an insured under a fire insurance policy can recover from the insurance company, special or consequential damages arising from sickness and loss of employment that allegedly resulted when the parties did not fully agree on the adjustment of damages, and whether such damages *were within the contemplation of the parties* at the time they entered into the fire insurance contract." (Our emphasis.)

Neither attorney has directed this court to an Indiana case directly on point, namely, specification of error number 6 as set out in the motion to correct errors, and we have been unable to find one ourselves.

Plaintiff-appellee, in whose favor we must construe the evidence, relies upon the case of *Miller, et al.* v. *Long* (1955), 126 Ind. App. 482, 131 N. E. 2d 348. In *Miller* the plaintiff's tractor was converted by the defendant. A suit for conversion was filed and plaintiff recovered the price which he had just previously paid for the tractor, as well as $930.00 for special damages.

The appellant, in *Miller,* appealed the case to this court, alleging that the $930.00 special damages was an error of law. This court determined that the evidence indicated the $930.00 special damages were compensation for a dam which had washed out because the plaintiff-appellee had been unable to use his tractor to prevent the dam's wash-out or to hire someone else to finish construction on the dam to prevent its washing out. The dam had initially cost the plaintiff-appellee $1,250.00. There was further evidence that reconstructing

the dam would cost $1,400.00 to $1,700.00, which appellee had paid.

This court, in ruling that the special damages which the court awarded was not an error of law, stated:

"Our courts do not adhere under all conditions and in all cases to the general rule of damages in conversion as appellants urge. We have above quoted from *Aufderheide* v. *Fulk, supra,* to the effect that the general rule or measure of damages in trover actions is not applicable under all conditions and is subject to some exceptions and that the underlying principle is that of fair and just compensation for the loss sustained. Further, the court said in that case that 'Special damages are such as *actually* result from the wrong done but which do not *necessarily* result therefrom, and for that reason are not implied by law, and to be recovered must be specially alleged and proven.' (Our emphasis.) It may be appropriately added that special damages always arise from or grow out of an unusual or peculiar state of facts, which may be known to one of the parties and not to the other, and follow as a natural and proximate consequence of the wrongful act by reason of the special circumstances or conditions existing in the particular case. 25 C. J. S., Damages, Sec. 2, pages 456 and 457, 'General Damages' and 459 and 460, 'Special Damages.'

"Thus it is, as a logical concomitant, that in trover and conversion, the particular conditions and circumstances of each particular case dictate the particular governing rule of damages. In other words, no hard and fast rule can be laid down as applicable to all cases, under all conditions, and as an invariable precedent in all cases. So it is, too, that judicial minds differ, and what one, in a particular case, may consider appropriate for the application of the rule for special damages, another may deny. So it is, also, that only in those cases where it is manifestly apparent that an erroneous rule or principle has been applied to the particular existing facts or conditions can the appellate tribunal interfere and substitute its judgment for that of the original forum.

"In the case before us no contention is made that the special damages claimed by appellee were not properly pleaded.

\* \* \*

"In view of the unusual existing facts and circumstances made apparent by the referred to evidence, we cannot say,

as a matter of law, that the court adopted and applied thereto an erroneous principle of law. The evidence shows a sequel of events and occurrences which actually happened to appellee's damage as a result of his being deprived of the use of his tractor when needed. * * *"

In our opinion, the *Miller* case is not applicable to the case at bar for the reason that the damages in *Miller* were proximate, *foreseeable* and consequential and should have been in the contemplation of Long when he converted Miller's tractor. In the case at bar, had the defendant-appellant refused to repair the plaintiff-appellee's home and had he suffered additional monetary loss to the home because of their failure to promptly repair the same, the *Miller* case could be in point.

The next Indiana case which the plaintiff-appellee relies upon is *Federal Life Ins. Co.* v. *Frazier* (1922), 192 Ind. 565, 137 N. E. 273. In *Frazier* the appellee sued on a $2,000.00 life insurance policy which the defendant company had refused to pay. The defendant had offered $696.90 as payment, claiming the balance was what they were entitled to as interest and non-paid premiums under an impairment lien which occurred when the defendant insurance company had bought the assets of two previous companies. In upholding the trial court's verdict for the appellee our Supreme Court stated:

"This seems to us a proper case for adding damages to the amount of the judgment."

This is not convincing evidence to us that an insurance company in all cases may be punished for not promptly settling a claim. What our Supreme Court did in *Frazier*, we have the right to do under today's Rule AP. 15 (M).

In the case at bar the plaintiff-appellee was completely unsatisfied with the check he received in the hospital for the balance owed him by the defendant-appellant. This fact was made known to the defendant-appellant by his attorney. This court could only come to the conclusion there was not a meeting of the minds for settlement when the check was issued and that the insurer thought it was paying the balance due. When the insurer learned it had not paid all it owed under its

contract it made additional payments to satisfy its assured in compliance with its policy.

Mr. McMullen was a sick man at the time of and before the fire.

He made some purchases for the house and additional repairs after the fire without the insurer's consent or knowledge. The insurer is entitled to know of these things—and, further, it also has the legal right to disagree, as does its assured, as to the amount of recovery. In this case the defendant-appellant, upon being advised there was a misunderstanding, immediately made payment of the additional amounts claimed by the plaintiff-appellee under his fire policy. We are of the opinion that such a misunderstanding between an insurance company and a person in good health would have been settled amicably with no bad results to the assured's health.

The remainder of the plaintiff-appellee's cases in support of sustaining the trial court's decision are not in point. They are either of another jurisdiction or they relate to personal injury policies where the law has long recognized compensation for mental suffering, lost employment, et cetera.

Defendant-appellant has relied upon many cases in support of its proposition that the trial court erred as a matter of law.

The first such case is *Schaffner* v. *Preston Oil Co.* (1932), 94 Ind. App. 554, 154 N. E. 780. In this case the oil company sued the defendant for breach of contract in failing to complete the drilling of an oil well. The company alleged that it had paid sums of money for other leases of land, in addition to the lease of the land on which Schaffner was to drill the well, and since Schaffner failed to complete the well, the oil company had been compelled to pay $5,000.00 in carrying the rentals in order to hold the leases and prevent their lapse and forfeiture. The trial court awarded $938.94 as damages for rentals on the leases, but this court reversed the decision of the trial court and stated, at page 563:

"It is elemental that, in an action for damage for the breach of a contract, only such damage may be recovered as can be said to be the natural and proximate consequences of the breach, *and such as can be fairly said to have been contemplated by the parties* as damages in case of a breach of said contract. *Fuller* v. *Curtis*, 100 Ind. 237. In the case of *Coy* v. *Gas Co.*, 146 Ind. 655, 46 N. E. 17, it was said: 'In actions on contract, as said by counsel, the damages that may be recovered for a breach of the covenants and conditions are, (1) those that result from the usual, natural, and probable consequence of the breach, and which, therefore, the parties may be thought to have had in mind when they entered into the contract; and (2) special damages *referred to in the contract,* and which actually occur, although not such as might naturally and probably be expected to arise out of the breach of the contract. It is to be observed that such special damages are also in contemplation of the parties in making the contract, as well as the damages of the first which naturally flow from a violation of the contract. The difference is, that damages naturally arising from the breach of the contract *need not be mentioned in the agreement made,* but will be presumed to have been in contemplation of the parties, whereas, *special damages, or those not naturally or usually arising from a breach of the contract,* though contemplated by the parties, *must be specially referred to in the contract itself.*' (Our italics.)

"The damages claimed were special, and were not mentioned in the contract. * * * We hold that appellee was not entitled to recover any sum of damages on account of rentals paid, and that the court erred in its first conclusion of law."

Another case in conformity with this ruling is *Fuller* v. *Curtis* (1884), 100 Ind. 237. In that case Curtis had sued Fuller for the price of a table-rake and attachments for a reaper. Fuller counterclaimed for damages in the loss of 80 bushels of wheat because the machine failed to function and Curtis refused to adjust it so that it would work properly. The trial court sustained a demurrer to the counterclaim which action was affirmed by our Supreme Court on appeal. Our Supreme Court stated, at page 239:

"The demurrer to the counter-claim was, we think, properly sustained. The loss of the appellant's wheat caused

by the voluntary use of a machine improperly adjusted must be borne by himself, *as the consequences did not necessarily arise from a breach of the agreement to properly adjust the rake and its attachments. The damages to be recovered must be the natural and proximate consequences of the breach of the agreement.* \* \* \* The damages sought to be recovered are not the direct and immediate consequences of the breach of the agreement, and, therefore, there was no error in sustaining the demurrer." (Our emphasis.)

A further case was that of *Lewis* v. *Lee* (1860), 15 Ind. 499. Lee sold to Lewis 25 acres of land, which Lewis refused to pay for. Lee alleged that he made other bargains, in anticipation of receiving the $2,000.00 for the 25 acres of land, which bargains he was unable to fulfill because of Lewis' failure to pay the purchase price, and he therefore sustained damage from loss of the bargains. Lee sought to recover these damages in the suit for breach of contract. Again, our Supreme Court held that such damages could not be recovered because they were too remote. For further cases stating the same proposition, see: *Lowe* v. *Turpie* (1896), 147 Ind. 652 and *Scottish Union & National Insurance Co.* v. *Bejcy* (6th Cir., 1953), 201 F. 2d 163, 37 A. L. R. 2d 534.

Plaintiff-appellee in the case at bar contended that he lost his job, contracted heart disease and ulcers as a result of Meridian Mutual's failure to promptly give everything for which he asked. Whether or not such injuries have been incurred by the plaintiff-appellee are a question of fact and for the determination of the jury. However, this court, as a matter of law, must determine from the cases and authorities cited that such injuries are too remote, inconsequential, and were not within the reasonable contemplation of the parties at the time the agreement was entered into, to allow the plaintiff-appellee to recover on Paragraph II of his complaint. It does not take a great deal of imagination to foresee the amount of abuse which our insurers would be subjected to were this court to allow such a recovery under the circumstances of this case. Unless the

plaintiff-appellee can show that the insurance company contacted his employer or in some other way directly performed some action by its agents which resulted in his losing his employment or in contracting his other ailments his damages are not the proximate result of anything contemplated under the fire insurance contract between the parties and he cannot recover for the same.

We are of the opinion that the trial court's overruling defendant-appellant's motion to correct errors directed to the second legal Paragraph of complaint was contrary to law.

Judgment reversed.

Robertson, P.J. and Lybrook, J., concur.

NOTE.—Reported in 282 N. E. 2d 558.