**LLOYDS OF LONDON and Michael George Miller,
Defendants-Appellants,**

v.

**Charles LOCK d/b/a Charles Lock Trucking, Plaintiff-Appellee.**

No. 1–982A268.

Court of Appeals of Indiana,
First District.

Sept. 20, 1983.

Jerry P. Belknap, James A. Strain, James E. Mahoney, Barnes & Thornburg, Indianapolis, Harvey M. Greene, Aurora, for defendants-appellants.

Bobby Jay Small, Indianapolis, William R. Wilson, Frank G. Kramer, Ewbank, Meyer, Kramer & Bush, Lawrenceburg, for plaintiff-appellee.

ROBERTSON, Presiding Judge.

Appellants-defendants, Lloyds of London and Michael George Miller (collectively "Underwriters"), appeal a jury verdict rendered in the Dearborn Circuit Court in favor of appellee-plaintiff, Charles Lock, d/b/a Charles Lock Trucking (Lock). The trial court awarded actual and punitive damages for an allegedly wrongful denial of liability under an insurance policy covering two trucks and two trailers which were allegedly stolen.

Affirmed in part, reversed in part and remanded.

Lock has owned and operated a trucking business for about the last twelve to fourteen years. In December of 1979, he obtained an insurance policy through Midwest Insurance Agency (Midwest) underwritten by Underwriters covering certain trucks and trailers. The policy specified actual cash value for the equipment and contained a clause limiting liability to ($100,000).

On September 18th, Lock and his driver, Gerald Louden parked a 1979 Kenworth tractor with a Ravens trailer and a 1978 R-model Mack truck with a Trailmobile trailer at the South Dayton truck stop in Ohio. On September 22, 1980, Lock and Louden returned to pick up the trucks, but they were gone. Lock reported the loss to the police and to Underwriters.

On September 25, 1980, Underwriters sent Lock a letter and requested a thirty-day period before considering the claim. They also requested information about the vehicles. The letter stated that upon receipt of the information, they would give further consideration to the claim. They asked Lock to notify them if the vehicles were recovered.

In January of 1981, a Florida highway patrolman recovered the vehicles. Lock notified Underwriters about the recovery before going to Florida to retrieve the vehicles. The monthly payment on the stolen trucks was around $3,700.00. Lock stated that these two rigs were more than paying their own way and were responsible for keeping his business solvent. The trucks were still under full warranty when they were stolen and were not incurring any repair expenses.

Underwriters eventually denied the claim stating, "[I]t's not a clear cut theft. It might have been a mysterious disappearance, or it might have been arranged for." On March 19, 1981, Lock filed his complaint for damages against Underwriters. On May 12, 1982, the trial court entered judgment on a jury verdict in favor of Lock and against Underwriters for $635,000.00, with $445,000.00 in punitive damages and $190,000.00 of compensatory damages.

■ The first issue concerns the award for punitive damages. Punitive damages are appropriate in a breach of contract action under certain circumstances. *First Federal Savings and Loan Assoc. of Indianapolis v. Mudgett,* (1979) Ind.App., 397

N.E.2d 1002. Our supreme court in *Travelers Indemnity Co. v. Armstrong,* (1982) Ind., 442 N.E.2d 349, has set forth certain standards to be applied in awarding punitive damages.

> [P]unitive damages should not be allowable upon evidence that is merely consistent with the hypothesis of malice, fraud, gross negligence or oppressiveness. Rather some evidence should be required that is inconsistent with the hypothesis that the tortious conduct was the result of a mistake of law or fact, honest error of judgment, over-zealousness, mere negligence or other such noniniquitous human failing.

*Id.* at 362. Furthermore, *Travelers* set forth a new standard of proof requiring clear and convincing evidence in support of punitive damages, as opposed to a preponderance of the evidence. In support of its decision, the court stated:

> A rule that would permit an award of punitive damages upon inferences permissibly drawn from evidence of no greater persuasive value than that required to uphold a finding of the breach of contract—which may be nothing more than a refusal to pay the amount demanded and subsequently found to be owing—injects such risks into refusing and defending against questionable claims as to render them, in essence, nondisputable. The public interest cannot be served by any policy that deters resort to the courts for the determination of bona fide commercial disputes.

Recently, in *Don Medow Motors, Inc. v. Grauman,* (1983) Ind.App., 446 N.E.2d 651, 654, we held that "enunciation of the common law through judicial opinions rendered in civil cases have retrospective as well as prospective effect, except where the enunciation would impair contracts made, or vested rights acquired in reliance on an earlier decision." We reversed and remanded on the issue of punitive damages in order to apply the clear and convincing evidence standard.[1]

■ In the case at bar, we are also compelled to apply the clear and convincing evidence standard. It could not have been applied at the trial court level, since *Travelers* was decided after the judgment was entered. We cannot utilize the standard and affirm the award of punitive damages because to do so would usurp the function of the trier of fact. *See Don Medows, supra.* Therefore, we reverse the award of punitive damages and remand this issue for a new trial under the standard of proof required by *Travelers.*

■ Secondly, Underwriters argue that the evidence is insufficient to sustain an award of $190,000 compensatory damages. The rules governing the role of the reviewing court in a sufficiency of the evidence case are firmly established. This court neither weighs the evidence nor resolves questions of credibility, but only looks to the evidence and reasonable inferences therefrom which support the verdict. In this case, there is substantial evidence supporting the award for compensatory damages.

■ The evidence shows that the payments on the lost equipment were approximately $3,700 per month. Lock testified that these trucks were not only paying their own way, but were also paying the way of other trucks with expensive repair bills. These trucks were still under warranty and not incurring any repair expenses. The actual cash value of the equipment was $125,000. Therefore, the jury could readily conclude that Lock suffered a business loss of more than $3,700 per month commencing in September, 1980, and continuing through May, 1982. Twenty months of net loss at $3,700 is $74,000. Together, these figures support an award of $190,000. Generally, no particular degree of mathematical certainty is required in awarding damages. The jury awarded $190,000 in compensatory damages. Moreover, as long as the amount of loss can be ascertained with a relative

1. *See also Tuthill Corporation, Fill-Rite Division v. Wolfe,* (1983) Ind.App., 451 N.E.2d 72 for an additional case where this court reversed and remanded on the issue of punitive damages in a contract case in order to apply the clear and convincing evidence standard.

degree of certainty and based upon proper evidence, loss of profits is admissible as a measure of damages. *Indiana Bell Tel. Co., Inc. v. O'Bryan,* (1980) Ind.App., 408 N.E.2d 178.

The jury reasonably concluded that Lock suffered business losses as a result of Underwriters refusal to honor the insurance policy. The award of $190,000 damages was within the scope of the evidence and is therefore affirmed.

Judgment affirmed in part and reversed and remanded for a new trial on the issue of punitive damages.

RATLIFF and NEAL, JJ., concur.