**Richard BURLESON, Plaintiff,**

v.

**ILLINOIS FARMERS INSURANCE CO., Defendant.**

**No. IP88–318–C.**

United States District Court,
S.D. Indiana,
Indianapolis Division.

Oct. 23, 1989.

John C. Trimble, Indianapolis, Ind., for plaintiff.

Michael E. Brown, Kightlinger & Gray, Indianapolis, Ind., for defendant.

**ORDER ON DEFENDANT'S MOTION FOR PARTIAL SUMMARY JUDGMENT**

McKINNEY, District Judge.

This diversity action comes before the Court on the defendant's motion for summary judgment. The issues raised have been briefed as of August 16, 1989, and are ready for resolution. For the reasons set forth below, the Court GRANTS IN PART and DENIES IN PART the motion. The plaintiff cannot recover consequential damages in this good faith dispute, but he can seek pre-judgment interest.

## I. FACTUAL AND PROCEDURAL BACKGROUND [1]

Plaintiff Richard Burleson owned a home at 3749 Alsace Drive in Indianapolis, and insured the home through defendant Illinois Farmers Insurance Company, Policy No. 36–90168–67–79. On or about February 28, 1987, a fire occurred at the home causing substantial damage. On March 10, 1987, detective Ed Burhenn swore out a probable cause affidavit wherein he concluded that Burleson had committed arson.

---

1. The facts relayed are undisputed, are determined to be admissible under the Federal Rules of Evidence, and are taken favorably for the non-movant plaintiff on this summary judgment motion.

That same day an Information was filed in the Marion County Superior Court charging Burleson with damaging property with the intent to defraud Farmers Insurance Company.

On February 23, 1988, after submitting claims to Farmers Insurance without avail, plaintiff filed this action for breach of contract in state court. In his prayer for relief, Burleson seeks damages under the insurance policy, as well as consequential damages flowing from the alleged breach of contract and prejudgment interest. This cause was properly removed to this federal district court on March 16, 1988. Thereafter, on August 23, 1988, plaintiff was acquitted of the arson charge in Marion Municipal Court.

Farmers Insurance has filed the present motion for summary judgment arguing that Burleson is not entitled to consequential damages beyond policy limits and that prejudgment interest is not available in this case. Plaintiff vigorously opposes the motion on both grounds. As will be seen, resolution of these issues turns not so much on the facts of this case but rather on the ascertaining the proper interpretation of Indiana law.

Before addressing these two issues, it is first necessary to set forth the governing standards for summary judgment.

## II. SUMMARY JUDGMENT STANDARDS

Under Rule 56(c) of the Federal Rules of Civil Procedure, summary judgment "shall be rendered forthwith if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Further, Rule 56(e) provides:

When a motion for summary judgment is made and supported as provided in this rule, an adverse party may not rest upon the mere allegations or denials of the adverse party's pleadings, but the adverse party's response, by affidavits or as otherwise provided in this rule, must set forth specific facts showing that there is a genuine issue for trial. If the adverse party does not so respond, summary judgment, if appropriate, shall be entered against the adverse party.

■ Since the Supreme Court's trilogy of decisions on summary judgment, *see Celotex Corp. v. Catrett,* 477 U.S. 317, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); and *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986), it is clear that the mandatory aspects of Rule 56 must be followed by the district courts, and, as a result, summary judgment must be entered where appropriate. Decisions of the Seventh Circuit reflect this change in attitude as well. *See, e.g., Herman v. City of Chicago,* 870 F.2d 400, 404 (7th Cir. 1989); *Spellman v. Commissioner,* 845 F.2d 148, 152 (7th Cir.1988); *Collins v. Associated Pathologists, Ltd.,* 844 F.2d 473 (7th Cir.1988).

With these standards at hand, the Court will now discuss the whether consequential damages and prejudgment interest are precluded as a matter of law in this case.

## III. DISCUSSION

A. *Consequential damages are precluded as matter of law where the insurer disputes coverage in good faith:*

1. Background.

■ Besides seeking to recover the policy limits, plaintiff also seeks an award of consequential damages caused by the carrier's alleged breach of contract. Specifically, Burleson seeks to recover damages that resulted from a foreclosure on his mortgage that occurred after Farmers Insurance refused to pay his claim. Farmers Insurance seeks summary judgment on this issue, arguing that its refusal to pay is in good faith as evidenced by the criminal information filed by the Marion County Prosecutor's Office against Burleson.

■ The parties' interpretations of relevant Indiana law on this issue are diametrically opposed. Although there are scores of cases dealing with punitive damages in bad faith cases, such decisions appear to be

of little value here where good faith is involved and where consequential or "excess" (i.e., compensatory) damages are sought rather than punitive or exemplary damages. In order to address this issue and predict what the Indiana Supreme Court would do,[2] this Court must engage in a somewhat lengthy discussion of the subject matter. The ultimate conclusion of the analysis is that while it is a question of fact under contract law analysis as to whether consequential damages are recoverable in this case, the Indiana Supreme Court would invoke public policy considerations to deny such damages where the insurer denies the claim in good faith.

To begin with, the dispute in this individual case mirrors the tension in this area of the law around the country. This is perhaps best summed up by an annotation on this subject where the following is written:

> With regard to the right of an insured or other beneficiary under an insurance policy to recover consequential ... damages for such failure or delay in making payment, in the absence of ... statutory penalties, there is a decided difference of opinion among the jurisdictions. The right to such consequential damages, under the general rule that damages recoverable for a breach of contract are such as may reasonably be considered as arising naturally from the breach of contract itself, is supported by some modern authority. On the other hand, the rule that damages for breach of a contract to pay money are limited to the amount owing under the contract, with interest, frequently has been applied to deny the recovery of consequential damages resulting from failure or delay in making payment under an insurance contract.

Annot., *Insurer's Liability for Consequential or Punitive Damages for Wrongful Delay or Refusal to Make Payments Due*

*Under Contracts,* 47 A.L.R.3d 314, 317–18 (1973).

Examples of the tension in this area can be found in many jurisdictions. *Compare Hayseeds, Inc. v. State Farm Fire & Casualty,* 352 S.E.2d 73 (W.Va.1986) (allowing consequential damages, including attorneys' fees, for the net economic loss cause by delay in settlement), *with Giovannitti v. Nationwide Insurance Co.,* 690 F.Supp. 1439 (W.D.Pa.1988) (rejecting consequentials under Pennsylvania law). And, the split of authority and the importance of the issue have not evaded the commentators' attention. *See, e.g.,* Appleman, *Insurance Law and Practice* §§ 8877–8879 (1981) (discussing various and divergent approaches courts have taken on this issue); Kornblum, *Defense of a First–Party Extra–Contract Claims Action,* 29 Am.Jur.Trials 481 (1982); Note, *The Availability of Excess Damages for Wrongful Refusal to Honor First Party Insurance Claims—An Emerging Trend,* 45 Fordham L.Rev. 164 (1976). Several articles from an Indiana Continuing Legal Education Forum seminar, including one written by one of the attorneys in this case, show that the issue has not bypassed Indiana practitioners even though it has not been squarely addressed by the Indiana appellate courts. *See Insurance Law,* §§ 6–8 (ICLEF 1983).[3]

2. Indiana Law.

In Indiana, there appear to be no cases directly on point. On the one hand, Indiana does allow recovery of punitive damages in insurance bad faith cases if a sufficiently malicious state of mind is proven by clear and convincing evidence. *See, e.g., Sexton v. Meridian Mutual Insurance Co.,* 337 N.E.2d 527 (Ind.App.1975); *Liberty Mutual Insurance Co. v. Parkinson,* 487 N.E.2d 162 (Ind.App.1985); Kornblum, Advani, *A*

---

2. For purposes of federal diversity cases, the state Supreme Court is the final authority on state law, and intermediate appellate court decisions are but a strong indication of what the state's high court would do. *See Williams, McCarthy, Kinley, Rudy & Picha v. Northwestern Nat. Insurance,* 750 F.2d 619 (7th Cir.1984); *Heinhold v. Bishop Motor Exp., Inc.,* 660 F.Supp. 382 (N.D.Ind.1987).

3. One of the articles entitled "Extra–Contractual Liability and Case Evaluation" notes that the insurer has a duty to exercise good faith and fairness in order to protect the insured form the potential of damages exceeding the limits of the insurance policy. Mr. Brown's article, which, ironically, is entitled "Defending the Indefensible Insurer," similarly speaks in terms of bad faith as far as consequential damages are concerned.

*review of Indiana "bad faith law,"* 31 Res Gestae 374 (1988). These Indiana cases allow punitive damages as a "special contractual remedy" and not as an independent tort. *Liberty Mutual,* 487 N.E.2d at 165. Yet, such cases have little relevance here, for plaintiff is not seeking punitive damages nor is he claiming bad faith. Moreover, the undisputed facts of this case show that such a bad faith claim could not survive summary judgment anyway. *Hoosier Insurance Co. v. Mangino,* 419 N.E.2d 978 (Ind.App.1981) (on strikingly similar facts in an alleged arson case, the Court of Appeals reversed a punitive damage award on the grounds that evidence of the incendiary origin of the fire demonstrated that the insurer did not act in bad faith in contesting liability).

On the other hand, several Indiana cases do involve awards of pure consequential damages that were not disturbed on appeal. *See Farm Bureau Mutual Insurance Co. v. Dercach,* 450 N.E.2d 537 (Ind. App.1983); *Lloyds of London v. Lock,* 454 N.E.2d 81 (Ind.App.1983); *Transport Insurance Co. v. Terrell Trucking,* 509 N.E.2d 220, 226 (Ind.App.1987); *Liberty Mutual Insurance Co. v. Parkinson,* 487 N.E.2d 162 (Ind.App.1985). As both parties rely on these cases, each opinion deserves close scrutiny in this instance.

In the first of these cases, *Farm Bureau Mutual Insurance Co. v. Dercach,* 450 N.E.2d 537, the insured was involved in an accident while driving a truck. His insurer, Farm Bureau secured a repair estimate and selected a garage to do the work. Farm Bureau then notified the insured that work could commence as soon as he signed a repair order, which he so signed two weeks later. Some ten months later, however, the garage had not been paid by Farm Bureau, and only after the garage threatened to sell the truck at auction did Farm Bureau pay the bill. Based on these facts, the insured filed an action seeking coverage for the repairs, $1,000 per week for loss of use, plus punitive damages. *Id.* at 538.

At trial the jury awarded the insured $12,000 for repairs and loss of use plus $25,000 in punitive damages. On appeal, the Indiana Court of Appeals remanded the

punitive damages issue for further consideration under the heightened burden of proof, but left intact the award of $12,000 for loss of use. Without specifically labelling the loss of use damages as "consequential damages" or addressing whether such damages are available, the *Farm Bureau* court could not find "error in [the jury's] award of $12,000 for lost use and additional repairs to the truck." *Id.* at 541. The thrust of the court's three short paragraphs on this issue was that the award was supported by the evidence.

The *Farm Bureau* case is thus difficult to gauge for several reasons. First, it is not entirely clear that the damages for loss of use were consequential damages beyond the policy limits because the court's opinion never states what the policy covered. Second, the court never specifically discussed the consequential damages issue. Nonetheless, *Farm Bureau* is somewhat instructive in that it appears that the damages were, in fact, above and beyond the policy. And, even though the consequential damages issue was not addressed, the case does appear to involve an affirmance of such an award of extra-contractual damages. The court thus impliedly approved of such an award by affirming the damages for loss of use. However, it is unclear whether the award of consequentials was based on a bad faith delay in settling the claim.

The second case is quite similar. In *Lloyds of London v. Lock,* 454 N.E.2d 81, the insureds owned a trucking business and were covered by a Lloyd policy for their trucks. The policy specifically limited liability to $100,000. Two of the trucks were stolen and the insureds promptly notified Lloyds. The vehicles were recovered by police several months later. During the interim, the insureds remained liable for monthly payments of some $3,700. The insureds sought to recover on their policy, but Lloyds denied the claim on the grounds that there was not a clear cut theft. *Id.* at 82.

The insureds sued Lloyds and recovered $190,000 in compensatory damages and $445,000 in punitive damages. On appeal,

just as in *Farm Bureau,* the *Lloyds* court remanded the punitive damages issue for reconsideration under the heightened burden of proof that had at that point only recently been announced by the Indiana Supreme Court. On the compensatory damages issue, however, the *Lloyds* court affirmed, but just as in *Farm Bureau,* did not specifically discuss consequential damages.

Nonetheless, the *Lloyds* opinion initially seems more helpful because the amount of damages affirmed was $190,000, while the policy limits were $100,000. Moreover, the court specifically discussed loss of profits as a measure of damages. *Lloyds,* 454 N.E.2d at 84. Thus, the implication is clear that consequential damages were, in fact, awarded in *Lloyds,* and such damages were affirmed on appeal.

On rehearing the case, however, the Indiana Court of Appeals, in a terse one paragraph opinion, modified the previous *Lloyds* decision "to the extent that the appellants' liability is not to exceed the limits of the insurance policy." *Lloyds of London v. Lock,* 455 N.E.2d 967 (Ind.App. 1983). Unfortunately the court there did not offer any explanation of its decision, so the *Lloyds* case is of little value in attempting to predict what the Indiana Supreme Court would do in such a scenario.

In another case, *Transport Insurance Co. v. Terrell Trucking,* 509 N.E.2d 220, the insured obtained a policy on its truck with $7,000 of coverage. The truck was damaged in an accident and a claim was filed. After some six months of haggling, the insured file an action against the insurer seeking compensatory and punitive damages. The jury awarded the plaintiff some $58,000 in compensatory damages and $6,000 in punitive damages. *Id.* at 222.

The Indiana Court of Appeals affirmed the entire judgment. As to the compensatory damages award, the court noted that "a considerable portion of the jury's award is for profits [the insured] lost due to its loss of use of the truck." 509 N.E.2d at 226. Because the insured did not have use of its truck for at least twenty months, and because the truck had historically earned more than $3,000 in profits each month, the court found that the $58,000 award was well within the scope of the evidence. *Id.*

Again, however, just as in *Farm Bureau,* the *Transport Insurance* court did not specifically discuss whether consequentials are available in such cases, nor did it address the standards for such an award. As in the other cases, the court impliedly approved of such an award, but did not indicate whether bad faith was a prerequisite.

Thus, two of these three cases, each of which was decided by a different district of the Indiana Court of Appeals,[4] impliedly approve of awards of consequential damages in direct action cases, while one appears to limit such damages to the limits of the policy. However, such intermediate appellate opinions do not necessarily carry the day, particularly where the precise issue presented here was not squarely addressed. Each case also involved claims for punitive damages based on bad faith, so it is difficult to discern whether this element entered into the consequential damages award.

In short, because of their possibly divergent interpretations and failure to specifically discuss the recoverability and standards for consequential damages in these settings, these three intermediate appellate court decisions are of little value in attempting to predict what the Indiana Supreme Court would do with this precise issue. As occurred in this case, good advocates are able to make legitimate arguments for their respective positions because these three decisions do not squarely address the issues raised today. A neutral interpretation of the cases, however, leads to the inescapable conclusion that the cases are not instructive on these issues.

A fourth opinion, however, is informative. In *Liberty Mutual Insurance Co. v. Parkinson,* 487 N.E.2d 162 (Ind.App.1985), *reh. den.* 491 N.E.2d 229 (Ind.App.1986),

**4.** *Lloyds* was decided by the First District, *Farm Bureau* by the Third District, and *Transport* *Insurance* by the Fourth District.

the Indiana Court of Appeals touched on the issue presented today. In that case, the insured sought recovery under her uninsured motorist coverage, but the insurer initially told her that her rates would go "sky high" if she filed a claim and that a rental car would not be covered while her car was being repaired. As a result of this conversation, the insured did not initially file a claim. *Id.* at 163.

Later, however, she consulted an attorney who determined that the policy would cover most of her losses. Her attorney demanded payment under the policy from Liberty Mutual, and a settlement was reached. The release forms specifically reserved the insured's rights to proceed against Liberty Mutual for bad faith in processing her claim. *Id.*

The insured brought such an action and was awarded $2,000 in compensatory damages and $40,000 in punitive damages. On appeal, the judgment was affirmed in all respects. The *Liberty Mutual* opinion is instructive here for its discussion of the grounds upon which the plaintiff brought her action to recover in excess of the policy limits. The court began by noting that "Indiana has long recognized that there is a legal duty implied in an insurance contract that the insurer must deal in good faith with its insured." *Id.* at 164. "This duty is breached when an insurer fails to settle a claim that could not in good faith be disputed." *Id.*

Based on these principles, the *Liberty Mutual* court rejected the argument that the insurer had fully satisfied its obligations under the policy. The court's reasoning is crucial to this case:

> Although [the insurer] may have settled with [the insured] for all benefits due under the policy, [the insured] did not receive all she was due under the contract. The contract contained a promise, implied in law, that Liberty Mutual

would deal fairly with her in the settlement of any claim. Liberty Mutual breached this term of the contract by discouraging Parkinson from filing a claim that could not in good faith be disputed. Thus, Parkinson was entitled to compensation for the breach, including damages for the delay in the settlement of her claim, an item that was not included in the settlement agreement.

*Liberty Mutual,* 487 N.E.2d at 165.

This language suggests that, as defendant argues in this case, there are several ways to breach an insurance contract. The obvious way under this type of policy is to refuse payment upon the satisfaction of all conditions precedent, that is, when a settlement, a judgment, or an appraisal award occurs.[5] It is undisputed that this type of breach is not present here, for no such event has taken place. Another type of breach occurs when an insurer contests a claim "that could not in good faith be disputed." *Id.* at 165. This is the square holding of *Liberty Mutual,* for the plaintiff's entire award of compensatory, consequential damages there was based on a breach of the implied covenant of good faith.[6]

In this case, however, there is neither an allegation nor any evidence of bad faith by Farmers Insurance. The Complaint merely recites that payment has not been made on the policy, and the undisputed evidence is that the State of Indiana prosecuted the plaintiff for arson. Plaintiff has not come forth with any evidence to rebut either the presumption of good faith supplied by *Carroll v. Statesman Insurance Co.,* 493 N.E.2d 1289, 1293 (Ind.App.1986) (insurer presumed to have good faith in bad faith punitive setting), nor the evidence of good faith supplied by the insurer. Accordingly, the second type of breach of contract claim, namely, the bad faith theory, is not present in this case. Accordingly, consequential

---

5. *See* Section I, "Loss Payment" of the policy in question, which states that the insurer will pay a covered loss upon any one of these three events.

6. Although otherwise ambiguous, the *Transport Insurance* case discussed previously similarly noted that one way to breach an insurance contract is to violate the implied good faith

covenant. There, in affirming the award of consequential damages, the court wrote that the "jury could have found, and apparently did find, that [the insurer] breached its contract with [the insured] by refusing to deal in good faith ... in settling the claim." *Transport Insurance,* 509 N.E.2d at 225.

damages are not available under that theory of relief.

### 3. Repudiation.

It must be remembered that an insurance contract is controlled by the same law as any other contract. *Metropolitan Life Insurance Co. v. Alterovitz*, 214 Ind. 186, 14 N.E.2d 570, 577 (1938); *Cincinnatti Insurance Co. v. Mallon*, 409 N.E.2d 1100, 1103 (Ind.App.1980). Thus, as with other contracts, there is another way to breach an insurance contract, namely, by repudiation of the agreement. Repudiation of a contract is in the "nature of [an] anticipatory breach before performance is due...." *Black's Law Dictionary*, p. 1171 (5th ed. 1979). This type of breach is but an act or declaration in advance of any actual breach amounting to a declaration on the part of the promisor that it will not perform on the future date at which the contract calls for performance. *Id. See generally Corbin on Contracts* § 959 (1982).

■ Such a repudiation or anticipatory breach can give rise to an action for damages. *Colonial Life & Accident Insurance Co. v. Newman*, 152 Ind.App. 554, 288 N.E.2d 195, 196 (1972), *trans. den.; Baltimore & O.S.W.R. Co. v. Adams*, 27 Ind. App. 185, 60 N.E. 1004 (1901). In this setting, "if the insurer's denial of liability goes to the essence of the agreement and amounts to a frustration of the ends it was expected to subserve, the contract may be treated as repudiated, good faith and good intentions of the insurer notwithstanding." *Colonial Life & Accident Ins.*, 288 N.E.2d at 196. So it is in this case, for even though the plaintiff's complaint does not speak in terms of repudiation, it is clear that this is his theory of relief. The question, then, is whether plaintiff can recover consequential damages in this setting.

■ In contract cases, including those relating to insurance, the measure of damages is the loss actually suffered as a result of the breach. *Ethyl Corp. v. Forcum–Lannom Assoc. Inc.*, 433 N.E.2d 1214, 1221 (Ind.App.1982). Such damages must be the natural and proximate consequences of the breach, *Dean v. State*, 147 Ind. 215, 46 N.E. 528 (1896); *Finley v. Chain*, 176 Ind.App. 66, 374 N.E.2d 67 (1978), and they must have been within the contemplation of the parties when the agreement was reached. *Strong v. Commercial Carpet Co., Inc.*, 163 Ind.App. 145, 322 N.E.2d 387 (1975). "The generally accepted measure of damages for breach of contract as enunciated in the well-known case of *Hadley v. Baxendale* (1854), 9 Ex. 341, 156 Eng.Rep. 145, are those such as may reasonably be supposed to have been in the contemplation of the parties at the time the contract was entered, as the probable result of its breach." *Strong v. Commercial Carpet Co., Inc.*, 163 Ind.App. 145, 322 N.E.2d 387, 392 n. 2 (1975). *Accord, Orto v. Jackson*, 413 N.E.2d 273, 278 (Ind. App.1980).

■ Additionally, in contract actions the defendant's motive or state of mind is of no moment except where punitive damages are sought. *Pirchio v. Noecker*, 226 Ind. 622, 82 N.E.2d 838 (1949); *Peterson v. Culver Educational Foundation*, 402 N.E.2d 448, 458 (Ind.App.1980). As the Indiana Supreme Court has noted, "[A] promisor's motive for breaching his contract is generally regarded as irrelevant because the promisee will be compensated for all damages proximately resulting from the promisor's breach." *Vernon Fire & Casualty Insurance Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173, 180 (1976).

In the insurance setting, the "breach of an insurance contract frequently results in the insured suffering consequential damages such as emotional distress, economic loss, inconvenience, and legal expenses." Kallianos, *Bad Faith Refusal to Pay First–Party Insurance Claims: A Growing Recognition of Extra–Contract Damages*, 64 N.C.L.Rev. 1421, 1423 (1986). "However, an insured often cannot recover these damages for two important reasons." *Id.* "First, courts strictly construe the *Hadley* concept of foreseeability to limit damages to those specifically related to the rights and duties set forth in the contract." *Id.* "Second, even when specific consequences are foreseeable, the insurance contract is typically viewed as an agreement to pay money and, therefore, recovery of dam-

ages is limited to the amount due under the contract plus interest." *Id.*

The closest Indiana decision, though factually distinct from today's case, reflects both of these rationales. In *Meridian Mutual Insurance Co. v. McMullen*, 152 Ind. App. 141, 282 N.E.2d 558 (1972), the Indiana Court of Appeals squarely addressed the questions of whether "under a fire insurance policy [the insured] can recover ... special or consequential damages arising from sickness and loss of employment that allegedly resulted when the parties did not fully agree on the adjustment of damages, and whether such damages were within the contemplation of the parties at the time they entered into the fire insurance contract." *Id.* 282 N.E.2d at 563. The *Meridian Mutual* court answered both questions negatively, reasoning as a matter of law that damages for sickness and loss of employment "are too remote, inconsequential, and were not within the reasonable contemplation of the parties...." *Id.* at 566. The court also noted that it "does not take a great deal of imagination to foresee the amount of abuse which our insurers would be subjected to were this court to allow such a recovery under the circumstances of this case." *Id.*

The *Meridian Mutual* case, however, is distinguishable from today's facts in that the insured there sought recovery for personal injuries and loss of employment due to the breach of a fire insurance policy. As a matter of proximate cause, such injuries are too remote and are thus precluded as a matter of law. In this case, though, Mr. Burleson seeks more direct financial damages, namely, the losses which he incurred because he was unable to pay his mortgage payments. Such damages are certainly more proximate to the breach and are more likely to have been within the reasonable contemplation of the parties.

There is authority from other states supporting the proposition that these damages should be recoverable under a contract law analysis. As one commentator has noted, the courts often unduly restrict the measure of damages in these types of cases:

> The general measure of damages available for breach of a contract to pay money is the amount due, plus interest.

There is language in a few cases, therefore, indicating that an insurer, following its breach of contract, is liable only for the amount of policy benefits owed, plus interest. The dicta in those cases, however, do not accurately represent the law. Absent a statute to the contrary, consequential damages are, in fact, always available in contract actions if they arise naturally from the breach and are such that they may reasonably be supposed to have been in the contemplation of the parties at the time the contract was made. The courts that have expressly considered the issue, therefore, have consistently recognized that, under certain circumstances, the foregoing test might be met in an action against an insurance company...."

A. Windt, *Insurance Claims and Disputes* § 6.37 at 374–75 (2d ed. 1988).

For instance, in *Lawton v. Great Southwest Fire Insurance Co.*, 118 N.H. 607, 392 A.2d 576 (1978), the New Hampshire Supreme Court rejected the insurer's arguments that consequential damages were precluded for the breach of a fire policy. In that case the insured sought to recover for damage to his business and credit reputation, loss of use of the property, loss of business opportunity, and damage occasioned by delay in payment. The court held that whether such damages were foreseeable and recoverable was a question of fact for the jury, reasoning that insurance is "often obtained because the insured is not in a position to personally bear the financial loss occasioned by a casualty, and serious financial injuries may often result from an insured's refusal or delay in payment." 392 A.2d at 579.

The court also rejected that argument that damages were limited to the policy limits, recognizing that "the policy limits restrict the amount the insurer may have to pay in the performance of the contract, not the damages that are recoverable for its breach." *Id.* *Cf., Mohr v. Dix Mutual Fire Insurance Co.*, 143 Ill.App.3d 989, 97 Ill.Dec. 831, 493 N.E.2d 638, 643 (1986) ("Where an insured alleges that the insurer has refused to comply with the provisions of an insurance policy, the measure of damages is usually limited to the contractual

amount. Consequential damages, however, may be recovered where they were reasonably foreseeable, were within the contemplation of the parties at the time the contract was entered, or arose out of special circumstances known to the parties.").

Thus, from a pure contractual analysis, there is strong authority for the proposition that the type of damages sought in this case may be considered by the trier of fact. The question becomes whether such losses were reasonably contemplated by the parties, and this issue, being fact sensitive, is ordinarily committed to the province of the jury.

Yet, there remains the policy level of analysis alluded to by the Indiana Court of Appeals in the *Meridian Mutual* case. In the context of bad faith cases involving punitive damages, the Indiana Court of Appeals has noted that insurers have a right to dispute coverage. This "right to disagree," coupled with the following language from the Indiana Supreme Court in *Vernon Fire & Casualty Insurance Co. v. Sharp*, 264 Ind. 599, 349 N.E.2d 173 (1976), suggest that even if consequential damages are recoverable as a matter of contract law, they might well be precluded on a public policy analysis:

> It is evident that the exercise of this right [to disagree] may directly result in the intentional infliction of temporal damage, including the damage of interference with an insured's business. The infliction of this damage has generally been regarded as privileged, and not compensable, for the simple reason that it is worth more to society than it costs, i.e., the insurer is permitted to dispute its liability in good faith because of the prohibitive social costs of a rule which would make claims nondisputable. Insurance companies burdened with such liability would either close their doors or increase premium rates to the point where only the rich could afford insurance.

*Vernon Fire*, 349 N.E.2d at 181. The *Vernon Fire* opinion thus implies that recovery of consequentials cannot be had because of public policy considerations giving rise to special privileges for insurers.

This diversity court, then, is left with the difficult task of predicting how the Indiana Supreme Court would rule on this question of first impression. In so ruling, this Court must keep in mind "that its function is not to choose the rule that it would adopt for itself, if free to do so, but to choose the rule that it believes the state court, from all that is known about its methods, is likely to adopt in the future." *Payton v. Benson*, 717 F.Supp. 1346, 1349 (S.D.Ind. 1989) (J. Tinder). In so doing, this Court is duty bound give "proper regard" to the rulings of the intermediate courts of this State, *Id.* at 1348, and full weight to the Indiana Supreme Court.

Given these principles, this Court determines that, while the issue of consequential damages in good faith cases is properly regarded as a question of fact in this case under general contract law principles, the Indiana Supreme Court, if faced with the issue, would nonetheless deny recovery of such damages on the public policy grounds suggested by the Supreme Court in *Vernon Fire* and the Indiana Court of Appeals in *Meridian Mutual,* namely, that the prohibitive social costs of ruling otherwise that might, in essence, make claims nondisputable.

If this Court were free to decide the issue for the State, it might well reach a different result, for the principles of law governing contracts, if properly applied, suggest the outcome of these cases. One of those maxims is that the breaching party's state of mind is of no consequence; that is to say, it is totally irrelevant if there are completely valid reasons for disputing coverage when it is finally determined that the insurer did, in fact, breach the contract. If public policy considerations were not considered and liability for consequential damages were allowed, the insurers would no doubt be able to adjust accordingly. If part of that adjustment included higher premiums, then so be it, for if the insurance policy is intended to ensure that the mortgage payments continue, and if that means that extra-policy damages must be paid where the contract is breached, then that extra cost could be spread among all policyholders.

Nonetheless, this Court concludes that the Indiana Supreme Court would invoke

public policy considerations to preclude such consequential damages. Thus, plaintiff in this case cannot recover these damages unless, through appeal and certification, he is able to persuade the Indiana Supreme Court otherwise.

It should be noted that such a result is not as harsh as the plaintiff would suggest. Insureds remain protected from bad faith delay by way of the bad faith breach of contract action, which can include both consequential and punitive damages. Ordinary delay in good faith cases is not completely without cost for insurers, for, as is discussed below, they remain liable for prejudgment interest in such cases. Finally, in many states including Indiana, the insured's have been granted special protections from the legislature against unfair claims practices. *See* The Unfair Claim Settlement Practices Act, *Ind.Code* § 27-4-1-1, *et seq.*

Accordingly, the defendant's motion for partial summary judgment as to consequential damages is GRANTED.

B. *Prejudgment interest is available:*

■ In determining whether prejudgment interest is available in this diversity action, this Court must look to Indiana law. *Travelers Insurance Co. v. Transport Insurance Co.,* 846 F.2d 1048, 1051 (7th Cir. 1988). " 'Under Indiana Law, prejudgment interest is proper when damages are ascertainable in accordance with fixed rules of evidence and accepted standards of valuation at the time damages accrue....' " *Id.* (citation omitted). However, such interest " 'is not appropriate when the fact finder must use its best judgment to assess the amount for past and future injury elements not measurable by fixed standards of value.' " *Id.* The policy behind such an award "is premised upon the theory that there has been a deprivation of the use of money or its equivalent and that unless interest is added the injured party can not be fully compensated for the loss suffered." *Id.* at 1052 (*quoting Indiana Insurance Co. v. Sentry Insurance Co.,* 437 N.E.2d 1381, 1391 (Ind.App.1982). Thus,

prejudgment interest in Indiana is recoverable not as interest but as additional damages to provide full compensation. *Travelers Insurance,* 846 F.2d at 1052.

"It is not always a prerequisite to the allowance of prejudgment interest that the amount of damages be liquidated." *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349, 365 (Ind.1982). "The crucial factor in allowing interest is whether the damages were ascertainable." *Blue Valley Turf Farms v. Realestate Marketing,* 424 N.E.2d 1088, 1091 (Ind.App.1981). In insurance cases, the rules are no different. "Prejudgment interest, therefore, will ... frequently be awarded to a prevailing insured." A. Windt, *Insurance Claims and Disputes* § 9.22 at 482 (2d ed. 1988). Thus,

[t]he existence of a good faith defense by the insurance company is usually irrelevant. If there was no doubt that if liability attached at all, the carrier would be liable for an ascertainable, though unliquidated, amount of money, prejudgment interest will usually be awarded.

*Id.*

In applying these rules to this case, the Court finds that the defendant's motion for partial summary judgment on the prejudgment interest issue must be denied. The damages sustained by the insured under the policy appear to be readily ascertainable. *See* Annot., *Insured's Right to Recover From Insurer Prejudgment Interest on Amount of Fire Loss,* 5 A.L.R.4th 126 (1982) (noting general rule that prejudgment interest is recoverable in such cases). At the least, the insurer has not demonstrated at this stage that prejudgment interest is precluded as a matter of law. Should the insured prevail, he will thus presumably be entitled to an award of prejudgment interest from the date the principal amount was demanded. *See, e.g., Town & Country Mutual Insurance Co. v. Savage,* 421 N.E.2d 704, 709 (Ind.App.1981) (prejudgment interest is computed from the time the principal amount was demanded or due).[7]

---

7. The Court notes that *Travelers Indemnity Co. v. Armstrong,* 442 N.E.2d 349, 369-70 (Ind. 1982), the principal case relied upon by the

defendant, does not mandate a contrary conclusion. In that case the parties had entered into a stipulation regarding interest; the court neither

## IV. CONCLUSION

Although Indiana law does not provide clear guidance on the issue, this Court concludes that consequential damages are not recoverable in Indiana from an insurer in a direct action on a policy where there is no showing of bad faith on the insurer's behalf. This conclusion, although not supported by a pure contractual analysis, finds support from a public policy standpoint. The defendant's motion for partial summary judgment is thus granted on this issue.

As to prejudgment interest, the defendant has failed to establish as a matter of law that damages under the policy are not readily ascertainable. Accordingly, the defendant's motion for partial summary judgment on this issue is denied.

The parties are to prepare accordingly for trial by jury on Monday, November 6, 1989, at 9:30 A.M.

IT IS SO ORDERED.

and Their Agents, Employees, and Successors in Office, and the Gravette Public School District, Defendants.

No. 89–5088.

United States District Court, W.D. Arkansas, Fayetteville Division.

Aug. 3, 1989.

See also 725 F.Supp. 1503.

specifically upheld or denied the contractual provision relied upon by the defendant. Because *Travelers* does not directly speak to the issue at hand, the Court finds that it is of little

or no value in this case. Accordingly, the general principles of prejudgment interest carry the day.